## Grievance of John Gorruso

[549 A.2d 631]

No. 86-179

Present: **Allen, C.J., Peck, Gibson and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed May 27, 1988

Motion for Reargument Denied June 24, 1988

*Therese M. Corsones* of *Corsones & Hansen*, Rutland, for Plaintiff-Appellee.

*Jeffrey L. Amestoy, Attorney General,* and *Michael Seibert, Assistant Attorney General,* Montpelier, for Defendant-Appellant.

*Jeffrey L. Amestoy, Attorney General,* and *Denise R. Johnson, Assistant Attorney General,* Montpelier, for amicus Department of Personnel.

*Michael R. Zimmerman,* Montpelier, for amicus VSEA.

**Gibson,** J. The State of Vermont appeals a decision of the Vermont Labor Relations Board (Board) reinstating grievant to his previous position. We reverse.

On January 29, 1985, grievant was dismissed from his position as a correctional officer at the Rutland Community Correctional Center for his sexual harassment of female employees at the Center. Grievant filed a grievance with the Board, which held extensive hearings on the merits of the issue. On January 23, 1986, a majority of the Board ordered grievant's reinstatement and reduced grievant's dismissal to a sixty-workday suspension without pay. One member of the Board dissented, asserting that grievant's actions constituted just cause for dismissal. In response to a motion for reconsideration filed by the State, the Board modified several of its original findings and reduced grievant's penalty from a sixty-workday suspension to a thirty-workday suspension. The State appealed, contending, among other things, that the Board exceeded its statutory and contractual authority by substituting its judgment for that of the employer in ordering the reinstatement of grievant. Since this issue is dispositive of the appeal, we will not consider the other issues raised by the State.

I.

■ Before we address this issue, however, we must resolve several preliminary issues raised by grievant and amicus curiae,

the Vermont State Employees' Association (VSEA). Grievant and VSEA object to the State's raising on appeal the issue of the Board's alleged abuse of its authority on the ground that the State did not raise this issue before the Board. While it is true that a party may not present issues that were not previously placed before the Board for its consideration, *In re McMahon*, 136 Vt. 512, 514, 394 A.2d 1136, 1138 (1978), we do not find that situation to exist in the instant case. The State cannot be expected to object to the Board exceeding its authority until the Board actually does so. The issue here did not arise until the Board issued its decision and substituted its judgment for that of the employer by ordering grievant's reinstatement. Such action is properly reviewable on appeal. See *Dartmouth Savings Bank* v. *F.O.S. Assoc.*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984) (fundamental nature of appellate review that misapplication of the law is subject to correction on appeal). Further, the State raised the issue before the Board in its motion for reconsideration. The issue is properly before us on appeal.

Grievant and VSEA also claim that through this appeal the State is attempting a "back door" appeal of the Board's decision in *In re Sherman*, 7 VLRB 380 (1984). We agree that the State may not now appeal that decision, because the time for appealing it has long since expired. See V.R.A.P. 4. In the instant case, however, the State is not attempting to appeal *Sherman*, but rather is asking this Court to review the Board's application of its contractual authority in disciplinary grievances which the Board first enunciated in *Sherman*. This Court has not previously ruled on that issue. Our decision in the instant case does not affect the result in *Sherman*; it does, however, affect the applicability of the Board's legal analysis in, *Sherman* to future disciplinary grievances.

■ Finally, grievant objects to the State's inclusion in the instant case of excerpts from the transcript of the Board's hearings in *Sherman*. We agree with grievant. A transcript of a prior proceeding not introduced at trial cannot be considered by this Court on appeal. *LaPlaca* v. *Lowery*, 134 Vt. 56, 57, 349 A.2d 235, 236 (1975). Because the *Sherman* transcript was not part of the record before the Board in the instant case, it will not be considered in deciding this appeal.

## II.

The principal issue of the instant case, however, is whether the Board exceeded its authority in substituting its judgment for that of the employer when it reinstated grievant. In fashioning its order, the Board relied in part upon its previous interpretation in *Sherman* of certain language added to the controlling collective bargaining agreement in 1984. The relevant language provides that:

> In any case involving a suspension or dismissal, should the Vermont Labor Relations Board find just cause for discipline, but determine that the penalty was inappropriate or excessive, the Vermont Labor Relations Board shall have the authority to impose a lesser form of discipline.

In conformity with its previous interpretations of this language, beginning with *Sherman*, the Board held that this language gives the Board the "authority to substitute our judgment for that of the Employer."[1]

The parties agree that the disputed language was added to the collective bargaining agreement to relieve the problem of having interminable appeals and remands between the Board and the employer, until a discipline is found that is mutually acceptable to those involved, or upheld on appeal. It is the State's position that under the new language, if the Board finds that just cause for discipline exists but disagrees with the discipline, the Board may impose a lesser penalty. It may do so, however, only after giving due deference to the State's choice of discipline, as is required by this Court's decisions of *In re Goddard*, 142 Vt. 437, 444-45, 457 A.2d 637, 641-42 (1983), and *In re Brooks*, 135 Vt. 563, 568, 382 A.2d 204, 207 (1977), and only if the Board concludes that the discipline imposed was "inappropriate or exces-

---

[1] The Board has interpreted the disputed language as follows:

[I]t is evident the parties intended the Board make an independent judgment whether a penalty issued by management is "inappropriate or excessive." In so doing, the parties contracted that we would substitute our judgment for management and not simply ensure that management was exercising its discretion within tolerable limits of reasonableness . . . . [W]e are now required to exercise our own judgment to determine whether the penalty is reasonable.

*In re Sherman*, 7 VLRB 380, 404 (1984).

sive."[2] Grievant and VSEA have a fundamentally different interpretation of the same language. They contend that after determining that just cause for discipline exists, the Board may impose a lesser form of punishment whenever it finds a penalty to be "inappropriate or excessive," and in doing so, may substitute its judgment for that of the State without according any deference to the State's choice of discipline. Thus, it is apparent that the disputed language is sufficiently ambiguous to require inquiry and a determination as to the meaning intended for it by the parties to the contract. See *Trustees of Net Realty Holding Trust* v. *AVCO Fin. Serv. of Barre, Inc.*, 144 Vt. 243, 248-49, 476 A.2d 530, 533 (1984).

It is well established that it is the duty of judicial or quasi-judicial bodies to construe a contract so as to ascertain the true intention of the parties. See *Gardner* v. *Gauthier*, 101 Vt. 147, 150, 141 A. 682, 684 (1928). This Court has also held that the expertise of the Board in construing collective bargaining agreements is presumed, and substantial deference must be accorded the Board's constructions. *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982). In the instant case, however, we find the Board's construction of the collective bargaining agreement to be unsupportable.

Where the language used in a contract will admit of more than one interpretation, we will look at the situation and motives of the parties, the subject matter of the contract, and the object sought to be attained by it. *Stratton* v. *Cartmell*, 114 Vt. 191, 194, 42 A.2d 419, 420 (1945); see also *Powers* v. *State Highway Bd.*, 123 Vt. 1, 4, 178 A.2d 390, 392 (1962) (in getting at the intent of the parties to a contract, the situation of the parties and their objectives and purposes are to be considered insofar as they throw light on their apparent intentions). In construing a contract, courts must endeavor to avoid what is unequal, unreasonable, and improbable, if this can be done consistently with the

---

[2] The State alleges that the term "inappropriate or excessive" was an attempt to describe the deferential standard of review the Board was required to accord the State's choice of discipline. See *In re Goddard*, 142 Vt. 437, 444-45, 457 A.2d 637, 641-42 (1983); *In re Muzzy*, 141 Vt. 463, 468-69, 449 A.2d 970, 972 (1982); *In re Carlson*, 140 Vt. 555, 559-60, 442 A.2d 57, 59-60 (1982); *In re Gage*, 137 Vt. 16, 18, 398 A.2d 297, 299 (1979); *In re Brooks*, 135 Vt. 563, 568, 382 A.2d 204, 207 (1977) (history of just cause determinations as Board's standard of review).

words of the contract. *Town of Royalton* v. *Royalton & Woodstock Turnpike Co.*, 14 Vt. 311, 322 (1842).

It is obvious that the intent of the parties to the contract was to cure a potentially debilitating series of grievance appeals. The relevant historical backdrop to the contract negotiations shows that the parties were aware of the problem of the Board's lack of authority to impose a lesser degree of discipline. Under this Court's prior interpretations of the Board's legal and contractual authority, if the Board found that "just cause" for discipline existed, but that there did not exist "just cause" for the discipline imposed,[3] the Board lacked authority to substitute its judgment for that of the employer and impose a lesser degree of discipline. See *Goddard*, 142 Vt. at 444-45, 457 A.2d at 641-42; *In re Gage*, 137 Vt. 16, 19, 398 A.2d 297, 299 (1979). Under such circumstances, the Board could only remand the grievance back to the employer for consideration of an alternative disciplinary measure. If grievant objected to the alternative discipline imposed, another appeal to the Board could result.

Thus, there existed the possibility (indeed the probability) of extensive litigation and long delays until a discipline was determined which the parties would accept or which would withstand appeal. See Note, *The Vermont Labor Relations Board's Role in Grievance Proceedings: Let's Make This Process Work*, 12 Vt. L. Rev. 429, 443-48 (1987) (practical problems for both State and grievants with delays resulting from resolving grievance proceedings). The State and VSEA were aware of this problem, and the disputed contract language was the direct result of their contractual negotiations over this issue. See *Sherman*, 7 VLRB at 395-405 (history of the contract negotiations and the legal background in which they occurred); Note, *supra*, at 443-48 (history of Board's role in grievance proceedings).

---

[3] "Just cause means some substantial shortcoming detrimental to the employer's interests which the law and sound public opinion recognize as a good cause for dismissal. Instances of repeated conduct insufficient in themselves may accumulate so as to provide for just cause for dismissal." *Gage*, 137 Vt. at 18, 398 A.2d at 299. We note that our definition of "just cause" has been historically linked to "just cause for dismissal." See *id.* The language of the contract, however, appears to relate our "just cause for dismissal" standard to any disciplinary action. See Article 16(1) ("No permanent . . . status employee covered by this agreement shall be disciplined without just cause.").

The disputed contract language speaks of granting the Board "the authority to impose a lesser form of discipline," but *only* after a finding that (1) "just cause" for discipline existed, and (2) the State's "penalty was inappropriate or excessive." The disputed language makes no mention of the Board substituting its judgment for that of the State in determining whether the penalty imposed was reasonable. Such a procedure would be a major departure from the procedure previously followed, and because it would create such a significant intrusion into the functions of management, we believe the intention to effectuate such a change would be spelled out explicitly in the contract if the parties had intended such a result.

Further, it is improbable that the State would so readily forfeit one of the basic prerogatives of management — that of determining an appropriate measure of discipline. In doing so, it, in effect, would consign all control over disciplinary decisions to the Board. This would be an absurd result and one we are convinced was not contemplated by the parties when they executed the present collective bargaining agreement. See *Trustees of Net Realty Holding Trust* v. *AVCO Fin. Serv. of Barre, Inc.*, 147 Vt. 472, 476, 520 A.2d 981, 983 (1986) (given a choice, rule of construction favors interpretation of a contract which makes it fair and reasonable).

Although the disputed language does indeed give the Board the authority to impose a lesser disciplinary penalty than that imposed by the State, we hold that the Board may exercise this power only after finding that the State had just cause for disciplining the grievant, but that there was no just cause for the choice of discipline imposed by the State. See, e.g., *Goddard*, 142 Vt. at 444, 457 A.2d at 641; *Brooks*, 135 Vt. at 568, 382 A.2d at 207. The Board may not arbitrarily substitute its judgment for that of the State in determining what is "inappropriate or excessive" discipline. See *Goddard*, 142 Vt. at 444, 457 A.2d at 641. Thus, the Board must give deference to the State's decision as to the discipline imposed. The duty imposed on the Board by this Court in *Goddard*, as established earlier in *Brooks*, 135 Vt. at 568, 382 A.2d at 207-08, remains in effect. "The ultimate criterion of just cause is whether the employer acted reasonably in discharging the employee because of misconduct." *Id.* The only change made in the contract was to provide that if the Board should determine that the *Goddard* test has been violated, the Board then has the authority to impose a lesser form of discipline and is not

required to remand the grievance to the State for imposition of a new penalty.[4]

## III.

██ In applying this test to the instant case, the record reveals that just cause for grievant's dismissal existed as a matter of law. The Board's findings do not support the penalty imposed by the Board, but they do support grievant's dismissal. In order to meet the legal criteria of just cause for dismissal, two criteria must be satisfied: first, the employee's conduct must be egregious enough to justify dismissal, and second, the employee must be on fair notice that his conduct could be grounds for dismissal. *Brooks*, 135 Vt. at 568, 382 A.2d at 207-08. The Board found that grievant had engaged in sexual harassment of co-workers. *In re Gorruso*, 9

---

[4] Although the opinion was actually issued prior to the effective date for which the presently disputed contract language would control grievance proceedings, we find that in *In re Colleran & Britt*, 6 VLRB 235 (1983), the Board correctly stated the proper standard of review under both *Goddard* and the present contract:

> The Board will not require that the employer prove by a preponderance of the evidence that its choice of discipline was proper. On this issue, the Board recognizes that a range of choices is available to the employer. If the State establishes management responsibly balanced the relevant factors in a particular case and struck a balance within tolerable limits of reasonableness, its penalty decision will be upheld. The Board will only alter the penalty selected by the employer if the employer imposes a penalty so severe, given the facts, that its choice amounts to an abuse of discretion.

> To be sure, we are not to substitute our judgment concerning the appropriateness of the penalty for that of the employer. I assume what the Court meant in *Goddard*, although not fully articulated, is that it is an inherent management function to control and direct the work force, and a necessary attribute of that function is to exercise discipline. Accordingly, as long as the exercise of that function is reasonable it will be sustained. Management is thus given broad discretion in disciplinary matters. It is the [B]oard's function only to assure that this discretion has been properly exercised within tolerable limits of reasonableness, i.e., "within the limits of law and contract."

*Id.* at 266 (citations omitted).

In this interpretation, an "abuse of discretion" by the State in its choice of discipline is the same as a lack of "just cause" for the discipline imposed. The difference is one of semantics only. See *Brooks*, 135 Vt. at 568, 382 A.2d at 207-08 ("The ultimate criterion of just cause is whether the employer acted reasonably . . . .").

VLRB 14, 34-39 (1986).[5] The Board characterized this conduct as "moderately severe." *Id.* at 39. The Board also found that grievant was "on notice that off-duty activity on his part relevant to his employment was considered by his employer to be relevant in assessing his work performance." *Id.* at 15. While the Board disagreed with the penalty imposed by the State, grievant's conduct was nonetheless serious enough to warrant a disciplinary response. *Id.* at 41. Thus, just cause for discipline existed according to the Board's own findings.

In order to justify a dismissal, however, the egregious conduct must constitute "some substantial shortcoming detrimental to the employer's interests which the law and sound public opinion recognize as good cause for dismissal." *Gage*, 137 Vt. at 18, 398 A.2d at 298. Grievant's repeated sexual harassment clearly constituted a substantial shortcoming detrimental to the State's interest. See 21 V.S.A. § 495 (sexual harassment prohibited under state law).[6] Workers in a correctional center environment must be able to depend upon their co-workers. Sexual harassment clearly undermines this necessary dependence. Moreover, we have previously found other instances of egregious behavior, similar in the level of offensive behavior to that occurring in the instant case, which justified bypassing progressive discipline and imposing the ultimate discipline of dismissal. See generally *Goddard*, 142 Vt. 437, 457 A.2d 637; *Carlson*, 140 Vt. 555, 442 A.2d 57; *Brooks*, 135 Vt. 563, 382 A.2d 204.

The only remaining question is whether grievant had notice that he could be discharged for this behavior. See *In re Morrissey*, 149 Vt. 1, 8-12, 538 A.2d 678, 683-85 (1987) (requirement of fair notice for dismissal). The Board found that a memorandum was posted, which grievant was required to read, which stated that sexual harassment "will not be tolerated." *Gorruso*, 9 VLRB at 26. The Board also found that grievant knew his conduct was

---

[5] The Board specifically found that grievant had sexually harassed a number of female co-workers, as follows: several unwanted sexual advances to two co-workers other than the co-workers involved in the following incidents; unwanted protestations of love to a married co-worker; numerous unwanted attempts to kiss several co-workers both on and off the job; one successful forcible kiss of a co-worker; and most seriously, repeated accosting, with sexual overtones, of a co-worker to the point where she feared for her personal safety.

[6] The State is also contractually required to attempt to create a work environment "free of any form of discrimination, intimidation or harassment . . . ."

prohibited, and "[h]e understood he could be disciplined for such behavior." *Id.* Since grievant had fair notice that this conduct could lead to a suspension, he, therefore, had fair notice that this conduct could also lead to dismissal. See *Carlson*, 140 Vt. at 560, 442 A.2d at 60. See general *Gorruso*, 9 VLRB at 45-46 (Gilson, Member, dissenting) (seriousness of grievant's misconduct and lack of probability of his conforming his conduct to reasonable norms of behavior justified the State's bypassing progressive discipline and dismissing grievant).

Therefore, we conclude that "just cause" for grievant's dismissal existed as a matter of law, that the Board's substitution of its judgment for that of the State was without foundation, and that this substitution constituted reversible error.

*Reversed; the order of the Vermont Labor Relations Board is vacated, and the dismissal is reinstated.*

Following issuance of the opinion, both grievant and amicus curiae, Vermont State Employees' Association, Inc., made timely motions for reargument pursuant to V.R.A.P. 40.

We note initially that amicus curiae does not possess an absolute right under V.R.A.P. 40 to make this motion, because an amicus curiae is not a party to the proceeding. Treating amicus' motion as one for permission to move for reargument, such permission is granted. Having failed to direct our attention to anything which we have not previously considered and dealt with in reaching our decision, amicus' motion to reargue is denied.

Grievant's motion covers some of the same issues raised by amicus. With respect to these issues, grievant's motion to reargue is denied. Grievant, however, does point out a factual inaccuracy of the Court's opinion. Therefore, in response to grievant's motion to reargue, we have recalled the opinion and revised it in order to correct this factual inaccuracy. The revision does not affect either the result or the analysis of this opinion. See *Mancini v. Mancini*, 143 Vt. 235, 240, 465 A.2d 272, 275 (1983).

*Grievant's and amicus curiae's motions for reargument are denied.*