### In re Grievance of Jeffrey Robins

[737 A.2d 370]

No. 98-107

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed July 16, 1999

*Samuel C. Palmisano*, VSEA General Counsel, and *Mark Heyman*, Deputy Legal Counsel, Montpelier, for Plaintiff-Appellant.

*William Sorrell*, Attorney General, and *George E.H. Gay*, Special Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Amestoy, C.J.** Grievant Jeffrey Robins, an employee of the Department of Environmental Conservation (DEC), appeals the decision of the Vermont Labor Relations Board dismissing his claim that his employer retaliated against him for his exercise of free speech and whistleblowing activities when the DEC ordered him to sign a permit certification which he believed contained untrue statements. We affirm the Board's decision.

## I.

Grievant is an environmental engineer in the Residuals Section of the Waste Water Management Division of the Department of Environmental Conservation, Agency of Natural Resources. The Residuals Section is one of five sections which comprise the Waste Water Management Division. At all relevant times, grievant's primary job function was to review and make recommendations on permits for the disposal of residual matter gathered in waste water treatment by determining whether permit applications complied with technical standards established by the DEC to address potential health hazards of residual disposal. The director of the Waste Water Management Division, Marilyn Davis, had the responsibility for and authority to interpret the technical standards. In his capacity as permit reviewer, grievant was responsible for reviewing and signing certification documents and providing them to Davis and Catherine Jamieson, the section chief of the Residuals Section, for issuance of permits on behalf of the Secretary of the Agency of Natural Resources.

This matter arises out of grievant's review and preparation, in July and August 1996, of the certification documents on a permit application for the disposal in the Mad River valley of waste ice cream and manufacturing by-products from Ben and Jerry's ice cream plant. In August, grievant informed Jamieson that he objected to signing the draft certification because he did not believe the technical standards had been met, and he understood his signature on the certification to signify that he agreed that the application complied with the technical standards and warranted the granting of a permit. The standard signature block read:

> The Department staff has reviewed the above project and application and finds it to conform with current technical standards. It is recommended that the foregoing findings be made and the Solid Waste Management Facility Certification be issued.

During August and September, grievant, Jamieson and Davis discussed grievant's concerns that Ben and Jerry's had failed to demonstrate compliance with the technical standards. Grievant indicated that, in light of his objection to the issuance of the permit, he would be violating the ethical standards of a professional engineer by signing the document. In September 1996, Jamieson requested William Bress, the state toxicologist, to provide an opinion on the need to restrict access to the sludge disposal site, one issue that concerned grievant. Bress responded with a memorandum to the DEC in which he submitted that if the sludge material were incorporated into the soil within forty-eight hours, no public health threat would be posed at the disposal site. On November 18, 1996, Davis sent a memorandum to grievant in which she indicated that she had considered each of grievant's concerns, enumerated those concerns and her analysis thereof, and determined that issuance of the permit was in compliance with the DEC's interpretation of the technical standards. In an effort to address grievant's objection to recommending findings that were contrary to grievant's interpretation, Davis proposed removing the second sentence from the standard signature block. She requested that grievant revise the signature block as she suggested, and sign the draft certification.

Grievant responded with another memorandum in which he again expressed disagreement with the DEC's interpretation of the technical standards and indicated that the memorandum from William Bress did not change his opinion. Although grievant acknowledged

that Davis made the final decisions for the DEC, he refused to sign the revised signature block, stating that "it still implies I think the project conforms to the technical standards." Grievant then proposed two signature blocks he was willing to sign. Davis responded with another memorandum, dated December 2, 1996, which stated in pertinent part:

> This is a direct order. Prepare the certification as directed, sign the certification, and forward it by Friday, December 6, 1996 to your supervisor as is customary practice. Failure to comply with this order can result in disciplinary action up to and including dismissal.

On December 4, 1996, grievant sent a memorandum to Davis and Canute Dalmasse, Director of the DEC's Office of Water Resources, which stated that Davis was requiring him to sign statements he did not believe were true, and that Davis's insistence was unethical and a potential breach of standards relating to professional engineering. Dalmasse informed grievant that the directives contained in Davis's two memoranda remained in effect.

On December 6, 1996, grievant signed his name on the signature page of the draft certification, but wrote "under protest" next to his signature. He submitted the document to Jamieson who told him that the signature was unacceptable. Jamieson suggested that he submit a separate protest letter in lieu of writing "under protest." Grievant again signed his name to the draft certification document, this time omitting the words "under protest." As per Jamieson's suggestion, he submitted to her a memorandum detailing his disapproval of the permit's issuance and indicating that he signed the document under protest. He sent copies of this memorandum to Davis, Dalmasse, DEC Commissioner William Brierly and Agency of Natural Resources Secretary Barbara Ripley.

Thereafter, grievant filed a grievance against the DEC alleging a violation of Article 5 ("No Discrimination or Harassment") and Article 71 (the "Whistleblower" provision) of the collective bargaining agreement between the State of Vermont and the Vermont State Employees' Association. Grievant also alleged that by ordering him to sign the certification document the DEC interfered with his First Amendment right to freedom of speech and refused to honor his right as a professional engineer to comply with the professional engineering canons. The Board concluded that grievant was engaged in free speech activities; however, it denied the grievance, holding that the

employer exercised its legitimate management rights in ordering grievant to sign the certification. The Board declined to consider grievant's claim under the professional engineering canons, concluding that such consideration falls outside its grievance jurisdiction as set forth in the State Employees' Labor Relations Act (SELRA). SELRA identifies the Board's grievance jurisdiction as limited to "dissatisfaction . . . with aspects of employment or working conditions under collective bargaining agreement." 3 V.S.A. § 902(14). The Board's analysis deemed the engineering canons outside the statutory definition of grievance, and declined to address this aspect of the claim.

## II.

We emphasize the limited nature of our review. We treat the Board's decision with substantial deference and will not reverse its conclusions where the findings of fact, taken as whole, support them. See *In re Butler*, 166 Vt. 423, 425, 697 A.2d 659, 661 (1997). We first address grievant's contention that the Board erred in refusing to consider his ethical obligations under the professional engineering canons. Although grievant claims the Board's refusal to interpret the Fundamental Canons of the Laws and Rules of Professional Engineering, see 26 V.S.A. §§ 1161-1194, is the equivalent of "a rule prohibiting any consideration of an employee's ethical obligations when they arise in the course of employment," the Board's decision, taken as a whole, does not support grievant's characterization.

Grievant's attempt to recast the Board's decision as a prohibition against ever considering a grievant's good faith adherence to the ethical obligations of his or her profession ignores the Board's factual finding that an employee in grievant's position was not required to be a licensed professional engineer. The Board further found that grievant was informed by his employer that the act of signing the permit did not implicate ethical standards of a professional engineer. The Board quoted a memorandum from Davis to grievant which stated: "I wish to point out that your signature on this document is not required to, and should not, include your professional engineering credentials. This position does not require other than a technical background and other permit reviewers are not [professional engineers]."

Resolving grievant's contention that signing the certification would constitute unprofessional conduct by "making any material misrepresentation in the practice of engineering," 26 V.S.A. § 1191(c)(5),

was unnecessary not only because the responsibilities of the position did not require a professional engineering license, but also because the certification was not a declaration of grievant's professional engineering judgment regarding whether the project conformed with the DEC's technical standards. The signature block, as ultimately signed by grievant, reads: "The Department staff has reviewed the above project and application and finds it to conform with current technical standards." Next to grievant's signature, the certification provides: "Application reviewed and Certification prepared By." Next to Jamieson's signature the certification provides: "Certification reviewed by." The principal signature on the certification is that of the department commissioner. The certification next to his signature states: "I do affirmatively make the foregoing findings and approve this Certification." The statement next to which grievant signed his name indicates his role in the issuance of the permit, that is, that he reviewed the application and prepared the certification. It is only the department commissioner whose signature indicates his personal and affirmative approval of the certification.

■ Grievant's opposition to signing the certification due to his conviction that his signature meant that he personally agreed with the issuance of the permit misapprehends the hierarchy of authority and responsibility within the Residuals Section and within the DEC overall. The Residuals Section of the Waste Water Management Division is organized by ascending levels of responsibility and authority. Grievant is an environmental engineer within the division, and, although his position is a fundamental component of the permit-issuing process, it is grievant's supervisors who have the ultimate responsibility and authority to interpret the technical standards and determine whether a permit application complies. This determination is not made by democratic process, and the certification, including the signature block and individual certifications, identifies the specific capacity in which grievant was to participate in the certification process. The canons of professional engineering were not relevant to grievant's responsibility to sign the certification. We conclude, therefore, that the Board's refusal to interpret the Fundamental Canons of the Laws and Rules of Professional Engineering was not error.

## III.

Grievant next argues that the Board erred in concluding that his exercise of free speech was not a motivating factor in the employer's

insistence that he sign the certification. He claims that being forced to sign the certification under threat of disciplinary action or discharge' constitutes a retaliatory act on the part of the employer. He contends that while the Board properly concluded that the objections he raised throughout the certification were protected speech, it failed to consider as protected speech his refusal to sign the certification. See *Riley v. National Fed'n of the Blind*, 487 U.S. 781, 795 (1988) (holding that First Amendment protections apply to compelled speech as well as restrictions on speech).

An employee's allegation that an employer took adverse action against the employee because of the exercise of the right to free speech ordinarily requires an analysis by the Board of the standards and burdens set forth in *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274 (1977). See *In re McCort*, 162 Vt. 481, 489-90, 650 A.2d 504, 509 (1994) (adopting *Mt. Healthy* analysis in cases where employees claim management took action against them for engaging in protected activities). We note at the outset grievant's unorthodox view of what constitutes "adverse action" in this case. No disciplinary action was taken by the employer against grievant either before or after signing the certification. There is no allegation, nor any sugges- tion, that grievant's pay, working conditions, or job responsibilities were adversely altered by the DEC in response to grievant's actions. Grievant contends instead that the "threat of disciplinary action" interfered with his exercise of free speech.

Grievant identifies two aspects of his actions as conduct deserving First Amendment protection. The first may be described as the speech raising objections throughout the certification process, and the second as the "compelled speech" of signing the certification. The Board concluded that the issues raised by grievant during the certification process (e.g., concerns about the public health implica- tions of waste disposal near a bike path) could be "fairly characterized as constituting speech on a matter of public concern." *In re Morrissey*, 149 Vt. 1, 15, 538 A.2d 678, 687 (1987).

While this characterization is accurate, it is also unnecessary on the facts of this case because grievant is unable to demonstrate any employer interference with his speech irrespective of whether it implicated a First Amendment right to comment on matters of public concern. As the Board concluded, far from discounting or suppressing objections raised by grievant during the certification process, "[g]rievant's supervisors seriously considered concerns expressed by [g]rievant, investigated the validity of those concerns, and attempted

to work with grievant to achieve a mutually satisfactory solution." Absent evidence that the employer interfered with an employee's speech, or an allegation that adverse action was taken by the employer as a result of the speech, a *Mt. Healthy* analysis is inapplicable. See, e.g., *Morrissey*, 149 Vt. at 2, 538 A.2d at 679 (grievant discharged due to exercise of free speech); cf. *In re Towle*, 164 Vt. 145, 146, 665 A.2d 55, 57 (1995) (addressing legality of grievant's termination); *McCort*, 162 Vt. at 494-96, 650 A.2d at 512-14 (analyzing whether employee's free speech activity was substantial or motivating factor in decision to terminate employee).

 Even if we applied a First Amendment analysis to the instant case, grievant's refusal to sign the certification — the second aspect of his conduct which he argues deserves First Amendment protection — does not outweigh the employer's interest in promoting the efficiency of the public services it performs through its employees. See *Morrissey*, 149 Vt. at 14, 538 A.2d at 687 (First Amendment analysis must "'arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees'") (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)). Grievant's refusal derived from the same issues which generated his objections during the application process, and thus, also implicated matters of public concern. Unlike the objections raised during the application process, however, refusing to sign a certification on a permit application — one of approximately 3,500 issued annually — due to a conflicting interpretation of technical standards for which grievant is not ultimately responsible, is too substantial an interruption in the DEC's efficient and continual operation. In light of the approximately twenty-five department employees responsible for the technical review of permits, allowing permit reviewers to refuse to prepare and sign certification documents based on their subjective interpretations of the technical standards would have unduly burdensome implications for the DEC. These implications far outweigh grievant's insistence that he be permitted to refuse to sign any certification that does not comport with his notion of technical compliance, particularly in light of the freedom he does possess to express his concerns and to elicit responses from the director of Waste Water Management, the chief of the Residuals Section, and the state toxicologist. Given the limited capacity in which grievant signed the certification, his ability to express freely his concerns and

objections to the permit application, and the fact that ultimate responsibility for interpreting the technical standards lay with someone else, the employer's interest in issuing permits in a timely and efficient manner outweighs grievant's interest in refusing to prepare and sign the certification.

Grievant asserts that his exercise of protected speech motivated the employer to compel him to sign the certification. Grievant appears to argue that the "compelled" signing of the certification was itself an adverse or retaliatory action. The Board, however, found that the order to sign was an order to do that which was expected of a permit reviewer. Grievant points to no other retaliatory or adverse action. Nor does grievant cite any authority for the claim that an employer's motives may be scrutinized when the employer directs the employee to carry out a task within the scope of the employee's job responsibility and imposes no adverse action on the employee. We find no error in the Board's determination that grievant's speech did not motivate the employer's actions.*

## IV.

Lastly, we address grievant's allegation that the employer violated the Whistleblower provision of the collective bargaining agreement between the state and the Vermont State Employees' Association. "Whistleblowing" is a protected activity pursuant to Article 73 of the agreement. Article 73 defines a "whistleblower" as a person who makes "public allegations of inefficiency or impropriety in government," and provides that such person shall not be discriminated against in employment with regard to exercising such "whistleblowing" rights. The Board concluded that grievant had not engaged in whistleblowing activities at the time he was ordered to sign the certification. Although grievant had engaged in an extended period of disagreement with his supervisors, the Board found that he had made no public allegations of inefficiency or impropriety.

---

*Although grievant alleged an Article 5 violation ("No Discrimination or Harassment") in his original claim, asserting that he was intimidated into making untrue statements, his appellate brief references only the Board's conclusion that he was not discriminated against for exercising his free speech rights. Article 5 prohibits discrimination, intimidation or harassment on the basis of "race, color, handicap, membership or non-membership in the VSEA, filing a complaint or grievance, or any other factor for which discrimination is prohibited by law." As we have already stated, grievant has failed to identify any adverse action, including any discrimination, harassment or intimidation, due to his exercise of free speech. We therefore concur with the Board that grievant's allegation of an Article 5 violation adds nothing to the allegations we have addressed of discrimination based on free speech.

Grievant argues that the Board's conclusion is incorrect for two reasons: first, because grievant intentionally made his objections part of the public record and, second, because internal complaints can be sufficient as a basis for retaliation due to whistleblowing activities. Grievant argues that because the application and certification process is open to the public and available for inspection pursuant to the Public Records Act, see 1 V.S.A. §§ 315-320, and because the various memoranda are part of the file, the public record was sufficient to find that grievant was engaged in protected whistleblowing activities. Even if grievant's actions by including the memoranda within the public records do not constitute public allegations of employer impropriety, grievant argues that his internal complaints can be sufficient as a basis for retaliation due to whistleblowing activities. See *Sullivan v. Massachusetts Mutual Life Ins. Co.*, 802 F. Supp. 716, 724 (D. Conn. 1992).

An interpretation of the agreement is within the expertise of the Board, and "we review such interpretations with great deference to that expertise." *In re VSEA*, 164 Vt. 214, 216, 666 A.2d 1182, 1183 (1995). The Board made no findings or conclusions with respect to grievant's inclusion of the memoranda in the file but concluded that the extended period of disagreement between grievant and his supervisors did not rise to the level of "public allegation." We disagree with grievant's argument that we must consider his internal complaints sufficient to implicate the whistleblower provision of the agreement. The decision in *Sullivan* does not advance his argument, as the employee in *Sullivan* did not have an employment contract, and therefore no contractual definition of "whistleblower" was at issue. The Board correctly concluded that grievant was not engaged in whistleblowing pursuant to the contract.

*Affirmed.*