## In re Grievance of Gustav VERDERBER and Vermont State Colleges Faculty Federation

[795 A.2d 1157]

No. 00-565

February 14, 2002. The Vermont State Colleges Faculty Federation (Federation) appeals a Labor Relations Board decision that courses taught in Johnson State College's External Degree Program (EDP) are not bargaining unit work and that EDP instructors are not members of the part-time faculty bargaining unit. The Federation contends that: (1) the Board erred because the plain language of the collective bargaining agreement covers EDP course assignments; (2) Johnson State's past treatment of EDP course assignments does not establish a past practice of treating the work as nonbargaining unit work; and (3) EDP instructors have been members of the part-time faculty bargaining unit since its inception. We affirm.

In 1991, the Federation was certified by the Board as the exclusive bargaining representative of a unit of part-time faculty who have taught for at least three semesters. Since then, the Federation and the Vermont State Colleges have negotiated several successive agreements, including one for September 1, 1998 to August 31, 2000, which is at the center of this dispute. That agreement makes no reference to EDP course work or instructors. Gustav Verderber is a part-time faculty member at Johnson State College and has taught mostly environmental science and biology at the College for eleven years.

Johnson State's main on-campus program and the EDP differ in significant ways. The EDP has a separate student body from the rest of Johnson State. It is a state-wide educational program through which older students can complete a bachelor's degree in their own localities. EDP students must have earned sixty credit hours before they are accepted to the program. The typical EDP course is delivered differently than an on-campus course. For instance, EDP courses are taught at night, over the internet or email, on Vermont Interactive Television, or once a month for eight hours on a weekend. These different formats require specialized presentation of the course material. EDP students are evaluated differently, as well. Presentations, papers, and group projects are more common than time-based testing.

To accommodate these differences, the EDP has a separate administrative structure from the rest of the College. The program is run by a director who supervises eight mentors, each in a different location around the state. EDP students are assigned to the mentor in their respective localities. Rather than going to campus to take courses, the students work with their mentors to create classes which meet their individual interests, needs, and schedules. After meeting with their local students prior to the start of each semester, the mentors recommend course offerings to the program director. The courses are considered Johnson State courses, but they are specially designated in the course catalog and on the students' transcripts.

Using their community contacts, the local mentors find and recommend local course instructors. On occasion, part-time college faculty are enlisted to teach a course. More commonly, however, the

courses offered are prepared by locally-recommended instructors in an ad hoc and highly individualized manner. The director hires instructors after a perfunctory approval by the academic dean of Johnson State. When instructors are brand new to the EDP, they are hired subject to the approval of the appropriate department chair, but they do not become members of the academic departments. Once instructors are approved, they have hardly any contact with the campus and no contact with the dean or the department heads. Neither the dean, nor any department chair, has ever rejected any of the instructors chosen by the director. All non-full time faculty — part time bargaining unit members, part time faculty who are not members of the bargaining unit, and EDP instructors — sign the same teaching contract, which includes the following boilerplate language: "This appointment is subject to the terms and conditions of the current agreement between the Vermont State Colleges and the Part-time Faculty Federation, and to the policies of the Vermont State Colleges Board of Trustees." EDP instructors and on-campus part-time faculty also receive the same salary.

After they are hired, EDP instructors are assigned courses differently than on-campus part-time faculty. On-campus courses are scheduled by the various department chairs with the approval of the academic dean. In addition, under the collective bargaining agreement, bargaining unit faculty are entitled to forty-five days notice of their course assignments. The agreement also specifies what the parties have described as "bargaining unit work": that is, it states that "teaching assignments with a minimum of six (6) credits per semester shall be offered to bargaining unit members."

EDP courses are scheduled by the program's director and state-wide mentors. The EDP's instructors are given no notice of course assignments and interact with only the local mentors in working out course assignments. Because the schedules of EDP students are more unpredictable and the courses more ad hoc, EDP courses are canceled more often than on-campus courses. When on-campus courses are canceled, part-time faculty covered by the collective bargaining agreement receive a standard cancellation fee. EDP instructors, on the other hand, have never been paid cancellation fees, nor have they requested payment. If an EDP course is canceled, the instructor is paid nothing.

The record below shows that Johnson State has never considered EDP courses as bargaining unit work, and EDP instructors have never been considered part of the bargaining unit. The EDP director has never offered, or been instructed to offer, EDP courses to bargaining unit part-time faculty. The instructors have never paid dues or filed a grievance, despite the fact that the EDP program predates the inception of the bargaining unit by more than ten years. Until this grievance, the Federation has done nothing that shows it considered EDP instructors as part of the bargaining unit, or EDP courses as bargaining unit work.

Following the procedures outlined above, the EDP's St. Albans mentor recommended offering an environmental interpretation course in his area during the summer of 1998. The EDP director worked with the mentor to find an instructor and eventually hired Tony Burton. Mr. Burton invested a great deal of time developing the course, but not enough students signed up, so the class was canceled. Mr. Burton was not paid a cancellation fee. During the following academic year grievant Mr. Verderber told the EDP director that he was interested in teaching an EDP course during the next summer. The next summer the environmental interpretation course was offered again with a different schedule to accommodate the

students. Although he understood that Mr. Verderber would be competent to teach the course, the director offered the job to Mr. Burton, largely because Burton had already designed the course for the prior summer.

In April 2000, the Federation filed a grievance with the Labor Relations Board on Mr. Verderber's behalf. They alleged that Mr. Verderber was entitled to the teaching assignment under the terms of the agreement. In addition, they alleged that the director's decision was arbitrary and capricious and that it was part of a pattern of discrimination against Mr. Verderber punishing him for his union activity. The Federation also alleged that EDP faculty were covered by the part-time faculty collective bargaining agreement. The Labor Relations Board found against the Federation on all points and dismissed the grievance. The Federation now appeals the Board's decision that EDP courses are not bargaining unit work and that EDP instructors are not part of the bargaining unit.

Judicial review of Labor Relations Board decisions is limited. *Milton Educ. & Support Ass'n v. Milton Bd. of School Trustees*, 171 Vt. 64, 69, 759 A.2d 479, 483 (2000). If the decision is within the Board's expertise, we presume it to be correct, valid, and reasonable, and we will normally defer to its determinations. *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419-20 (1989). The Board's expertise includes that of interpreting collective bargaining agreements, so we review the Board's construction of the agreement with great deference. *In re Robins*, 169 Vt. 377, 386, 737 A.2d 370, 376 (1999).

The first part of this dispute centers on Article XVIII of the collective bargaining agreement, which governs course assignment to part-time faculty and provides in relevant part:

E. The College reserves the right to give preference to full-time faculty for teaching courses on an overload basis or to individual administrators prior to offering courses to part-time faculty.

F. Except as provided in Section E and Section H, . . . Two (2) available teaching assignments with a minimum of six (6) credits per semester shall be first offered to bargaining unit members on the basis of seniority . . . and on the basis of:
1. The academic qualifications of the part-time faculty including teaching ability.
2. The availability and stated preferences of the part-time faculty as indicated on the teaching availability form.
3. Experience in teaching available courses.
4. The curricular needs of the department.

. . . .

H. In addition to the normal non-unit assignment of courses that may occur consistent with this article, the Colleges may offer assignments to individuals without following the procedures above. Such assignments shall be limited to individuals with exceptional qualifications or expertise or in extraordinary circumstances.

To the Federation, the provision is clear and unambiguous. The environmental interpretation course is an "available teaching assignment" and should have been offered to Verderber because he had not reached his two-assignment floor and none of the exceptions in E and H apply. The Colleges acknowledges that the EDP program did not comply with (F), but argues that the provision is ambiguous and its requirements do not apply to EDP courses.

This is a question of contract interpretation. When construing a contract, we seek to ascertain the intent of the parties. *In re Cronan*, 151 Vt. 576, 579, 563 A.2d 1316, 1317 (1989). As the Federation argues, when the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms. *In re West*, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996). We must, however, give effect to every part of the instrument and form a harmonious whole from the parts. *Id.*

We agree with the Federation that if we view section F of Article XVIII of the agreement in isolation and with the understanding that no specific language treats EDP courses differently, the plain meaning supports its position. The Board looked at the whole agreement in the context of the dispute, however, and found several instances where applying the terms of the agreement to the EDP would be nonsensical. These provisions show that the parties never contemplated including EDP course assignments when the agreement was executed. First, the EDP's scheduling and course assignment procedures do not fit into the terms of the contract. Most notably, the agreement makes no mention of mentors, who are so crucial to the EDP's course creation and scheduling. More specifically, section B(8) of Article XVIII directs course availability forms to be sent to department chairs or other administrators to establish the department schedule. This makes no sense in the context of the EDP because its courses are taught off-campus and are not part of any academic department. In addition, three quarters of EDP students do not register until between two and four weeks before the academic year begins. This makes it impractical to notify bargaining unit faculty of their course assignments forty-five days before the courses begin, as required in Article XVIII, section (I) of the agreement.

The EDP also does not fit with the seniority and faculty evaluation provisions of the agreement. In section G of Article XVIII, "seniority" is defined in terms of the number of credits taught "at a particular campus-based college." Pay grades are also assigned based on credits taught at campus-based colleges. The EDP, however, is not a campus-based program; except for the administrative offices, all of its activities occur off-campus throughout the state. Finally, Article XV on faculty evaluations includes the department chairs as an integral part of the process, which again makes no sense as applied to the EDP.

Once the Board applied the Federation construction of section (F) of Article XVIII to other parts of the contract and found the dissonance described above, it found that the language was ambiguous and harmonized the provisions by concluding that EDP courses were not governed by the contract. We agree that an interpretation which harmonizes all parts of the contract is preferable to an interpretation which focuses on one provision "heedless of context." *Blackie v. State*, 75 F.3d 716, 722 (1st Cir. 1996).

The Board went further and considered extrinsic evidence that the parties had not treated EDP courses as bargaining unit work. The Federation attacks this action, arguing that the Board found that the parties had established a binding past practice at variance with the terms of the contract and without evidence that the Federation was notified of the

practice as required by *Nzomo v. Vermont State Colleges*, 136 Vt. 97, 102, 385 A.2d 1099, 1102 (1978). We disagree with this characterization of the Board decision.

We read the Board as holding instead that in light of the ambiguity in the contract, it can consider extrinsic evidence to construe it. See *In re Gorruso*, 150 Vt. 139, 143, 549 A.2d 631, 634 (1988). Indeed, much of the limited evidence relied upon by the Board was properly considered in determining whether an ambiguity existed. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) (in determining ambiguity, court can consider circumstances surrounding the making of the instrument). We have also held that in construing a labor contract, the Board can consider "the practical construction placed upon an instrument by the parties." *In re Cronan*, 151 Vt. at 579, 563 A.2d at 1317. In addition, based on its evaluation of the contract language, the Board could look at the "situation and motives of the parties," and the result "contemplated by the parties when they executed the . . . agreement." *Gorruso*, 150 Vt. at 143, 145, 549 A.2d at 634-35.

All of the extrinsic evidence favored the Colleges' position that the contract did not cover EDP courses. For example, since 1991, when the first part-time faculty collective bargaining agreement was signed, the Federation has never filed a grievance over assignment of EDP courses. Furthermore, when courses are canceled, sections L and M of Article XVIII entitle bargaining unit members to a cancellation fee. Despite the regular cancellation of EDP courses for lack of enrollment and the contract provision on faculty fees for canceled classes, no EDP instructor has been paid the required cancellation fee, nor has any instructor ever filed a grievance over the matter.

Considering the evidence before the Labor Relations Board and giving the Board the deference to which it is entitled in its interpretation of collective bargaining agreements, the Board's interpretation of the agreement is reasonable.

We now turn to the question of union membership. The Federation argues that the Board erred by not recognizing that some of the EDP instructors are members of the part-time faculty bargaining unit. In its original grievance, the Federation asked the Board to order it and the Colleges to determine which of the EDP instructors qualified as bargaining unit members based on the following criteria in Appendix C to the collective bargaining agreement:

> 1) employed for at least three semesters, or who currently are in their third teaching semester, 2) teach at least six credit hours per academic year, 3) notwithstanding the first two requirements, adjuncts who have not taught during one academic year, past or present, are included in the bargaining unit provided they otherwise teach at least six credit hours per academic year and have been employed for at least three semesters, or who are currently in their third teaching semester; and 4) are not otherwise employed by the Colleges in a full-time position as a manager or administrator.

Our analysis above applies equally to this issue. Here, the extrinsic evidence is even stronger. Prior to this grievance, the Federation had never claimed that EDP instructors qualified as bargaining unit members. As the Colleges emphasizes, the effect of a decision in the Federation's favor would be to add many persons to the bargaining unit with no indication that these persons want inclusion. Keeping in mind the deference we accord the Labor Relations Board,

the evidence supports the Board's decision.

*Affirmed.*

Motion for reargument denied March 29, 2002.