IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2005 Session

## STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES, ex rel., TRACY ELLIS v. MALCOLM HUMES

**A Direct Appeal from the Juvenile Court for Shelby County**
**No. G3291      The Honorable Kenneth Turner, Judge**

---

**No. W2004-00602-COA-R3-JV - Filed March 10, 2005**

---

Appellant seeks relief, ostensibly under Tenn. R. Civ. P. 60.02, from final orders establishing paternity and setting child support obligations. Because Appellant failed to timely file his petition to establish fraud and/or misrepresentation and because the equities in this matter do not support the disestablishment of paternity, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Edwin C. Lenow of Memphis for Appellant, Malcolm Humes

Paul G. Summers, Attorney General and Reporter; Stuart F. Wilson-Patton, Senior Counsel for Appellee, State of Tennessee, ex rel., Tracy Ellis

**OPINION**

Tracy L. Ellis is the mother of the two minor children at issue in this case: O.T.H.E. (d.o.b. 3/10/93) and N.L.E. (d.o.b. 10/1/94). On August 10, 1994, the State of Tennessee ("State," or "Appellee"), as assignee of Tracy Ellis, filed a petition to establish paternity alleging that Malcolm Todd Humes ("Appellant") is the natural father of O.T.H.E. On August 30, 1994, the trial court entered an order finding that Mr. Humes is the natural father of O.T.H.E. and ordering him to pay support for that child.

On June 26, 1995, the State filed a "Petition to Establish Paternity" against Mr. Humes to establish paternity of N.L.E. and to incorporate the previous order legitimizing O.T.H.E. This Petition asserts that Mr. Humes is N.L.E.'s natural father and that Ms. Ellis is her mother. Ms. Ellis signed the Petition under oath on June 19, 1995. On January 20, 1998, the Juvenile Court Referee

entered findings and recommendations granting a default judgment against Mr. Humes based upon Mr. Humes' failure to appear. The Referee found Mr. Humes to be N.L.E.'s natural father and ordered him to pay both current and retroactive child support. These findings and recommendations were confirmed by the trial court on the same day. A second hearing before the Referee was held and, on January 30, 1998, the Referee entered findings and recommendations setting aside the previous findings and recommendations of January 20, 1998, and setting current and retroactive child support. In addition, H.L.E. was found to be a public charge and Mr. Humes was found to be her natural father. The findings and recommendations of the Referee were confirmed by the trial court on January 30, 1998.[1]

The record contains a "Petition for Citation for Contempt of Court," which was set for hearing on January 14, 2002. On that date, Mr. Humes appeared and signed a waiver of his right to an attorney before the Referee. On January 14, 2002, the Referee entered findings and recommendations in which she found Mr. Humes in contempt of court for failure to pay monthly child support of $329.04 as previously ordered by the trial court.[2] The Referee ordered Mr. Humes to be confined to the county jail until he purged himself of contempt by payment of $1,500 of the arrearage and increased his monthly payment on the arrearage to $75 per month. On the same day, the trial court confirmed and adopted the findings and recommendations of the Referee.[3]

In April of 2003, Ms. Ellis died. On July 15, 2003, Mr. Humes filed a "Petition to Set Aside Order of Paternity and Child Support." By his Petition, Mr. Humes sought relief on the grounds that DNA testing had excluded him from paternity of the children and he requested that the previous child support orders declaring him to be the children's father be set aside or, in the alternative, that he be granted new DNA testing. Mr. Humes attached copies of the alleged parentage test results to his Petition.[4] On August 1, 2003, the State filed an Answer to Mr. Humes' Petition asserting that Mr. Humes should be denied relief based, *inter alia*, upon the doctrines of *res judicata* and collateral estoppel. Mr. Humes filed an "Amended Petition to Set Aside Order of Paternity and Child Support" on September 25, 2003.

A hearing before the Referee was held on December 12, 2003. Mr. Humes was the only witness to testify. Mr. Humes' position at the hearing was that Ms. Ellis had misled or defrauded him into believing that he was the father of these children. He testified that, as early as June of 2000, he became suspicious about the parentage of these children after N.L.E., who was then

---

[1] The record contains income assignment orders issued to Mr. Humes' employers from February, April, May and September 1998.

[2] Mr. Humes claims that he asked the court to allow him parentage testing at the contempt hearing on January 14, 2002. There is no evidence in the record that he made such a request.

[3] The record contains an income withholding order issued to Mr. Humes' employer on June 7, 2002 showing a total monthly child support obligation of $493.56 per month.

[4] While copies of these parentage test results appear in the record, they were not admitted into evidence based upon objections by counsel for the State.

approximately five years old, told him that she had two daddies. At the time, Ms. Ellis was married and Mr. Humes testified that he thought N.L.E. was referring to her step-father. Additionally, Mr. Humes testified that a Ms. Vanessa Williams, whom he claimed was a friend of Ms. Ellis', gave him some reason to doubt his paternity. Ms. Williams did not testify and, from Mr. Humes' testimony, it is unclear exactly what Ms. Williams allegedly said that gave rise to his suspicions. Based upon this information, Mr. Humes testified that he had DNA tests performed on July 7, 2000 when the children were visiting him.[5] Mr. Humes testified that he did not receive the results of these tests until February 11, 2003. Despite his belief that he was not the father of these children, the evidence adduced at the hearing indicates that he continued to hold himself out as the children's father, even as late as the date of the hearing when he brought lunch money to them at school. At the close of proof, the State made an oral motion that the petitions for relief be dismissed on grounds that Mr. Humes had failed to introduce any competent evidence of fraud, and that there was no legal or equitable basis for relief from the orders of paternity or child support. On January 28, 2004, the Referee entered findings and recommendations dismissing Mr. Humes' petitions.[6] The trial court confirmed the Referee's findings and recommendations on the same day.

Mr. Humes appeals and raises one issue for review as stated in his brief: Whether the Juvenile Court should have set aside the Paternity Orders and Child Support Orders.

Tennessee Rule of Civil Procedure 60.02 reads, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken....

The burden of proof under Rule 60.02 is on the party seeking relief, and that party carries a heavy burden. *Gilliland ex rel. Gilliland v. Pinkley*, 2001 WL 557985, at * 4 (Tenn.Ct.App. May 23, 2001)

---

[5] The only DNA test results in the record were those attached to Mr. Humes' Petition and these tests were not admitted into evidence. The test results, however, indicate that they were conducted in June of 2002 and the results are dated July 16, 2002. These tests were conducted by Memorial Blood Centers in Minneapolis, MN.

[6] The original findings and recommendations entered on December 12, 2003 were amended and filed on January 28, 2004.

(citations omitted). Rule 60.02 is intended to be an "exceptional remedy" that serves as "'an escape valve from possible inequity that might otherwise arise from the'" Tennessee Rules' principles of finality. *Id*. (quoting *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn.1990)). The disposition of motions under Rule 60.02 is best left to the discretion of the lower court, and such decisions are reversed only if they constitute an abuse of that discretion. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App .1998) (quoting *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94 (Tenn.1993)).

Although Mr. Humes does not clearly indicate which provision(s) of Rule 60.02 he is relying upon, in his brief, he asserts as grounds "newly discovered evidence," "fraudulent misrepresentation," "change of circumstances," and "results of the DNA test." Consequently, it appears that he is asking for relief based upon two of the five provisions of Rule 60.02. Mr. Humes first asserts the grounds of fraud and misrepresentation under Tenn. R. Civ. P. 60.02(2). Specifically, he contends that Ms. Ellis perpetrated a fraud upon him by misleading him about his paternity of these children. We first note that the paternity and child support orders in this case were entered on September 13, 1994 for O.T.H.E. and on January 30, 1998 for N.L.E. As discussed above, Mr. Humes' request for relief from these orders was not made until July 15, 2003. Under the provisions of Rule 60.02, any request for relief under Rule 60.02 on the grounds of fraud or misrepresentation must be made "not more than one year after the judgment, order or proceeding was entered or taken." Consequently, Mr. Humes waited eight years too long as to O.T.H.E. and four years too long for N.L.E. to seek relief under Rule 60.02(2).

However, even if we assume *arguendo* that Mr. Humes' request for relief under Rule 60.02(2) was timely made, from the record before us, we would still conclude that he failed to meet his burden for establishing fraud or misrepresentation. The law on fraud is well established in Tennessee and, in order to state a claim for fraud, the following elements must be established: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation['s] falsity--that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise." *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App.1998) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App.1990)).

From the record before us, Mr. Humes failed to meet his burden on the issue of fraud and misrepresentation on the part of Ms. Ellis. Specifically, he failed to establish that Ms. Ellis knew he was not the father of these children before the paternity orders were entered, that she knowingly misrepresented to him that he was the father, and that he reasonably relied upon her misrepresentation to his detriment. Consequently, the trial court did not err in denying Mr. Humes relief under Rule 60.02(2).

Despite the fact that the trial court excluded the results of the parentage tests from the evidence in this case and the fact that Mr. Humes raises no issue as to whether the trial court erred in so doing, Mr. Humes next asserts that these parentage tests that allegedly excluded him from paternity, automatically entitled him to relief under Rule 60.02(4). To support his position, Mr. Humes relies upon this Court's opinions in *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999) (No Tenn. R. App. P. 11 application filed) and *Richards v. Read*, No. 01A01-9708-PB-00450, 1999 WL 820823 (Tenn. Ct. App. July 27, 1999) (No Tenn. R. App. P. 11 application filed) to support his position. In *White v. Armstrong*, this Court disestablished paternity by granting relief under Tenn. R. Civ. P. 60.02(4) on grounds that it was not equitable for the child support orders to have prospective application. Although the impetus for the Court's decision was parentage test results that excluded the legal father from paternity, this case does not establish a bright-line rule that such test results, even if properly admitted into evidence, automatically entitled a legal father to relief under Rule 60.02(4). Rather, the *White* Court cautions that Rule 60 relief "should not be granted without analyzing the burdens that granting relief or failing to grant relief will place on all who have an interest in the proceeding." Likewise, the case of *Richards v. Read* does not stand for the proposition that parentage testing alone should result in automatic relief under Rule 60 absent a weighing of the equities in such cases. Judge Cottrell's separate concurring opinion in *Richards* reads, in relevant part, as follows:

> I am concerned that the majority opinion, and the other recent opinions discussed therein, may be construed as establishing a black-letter rule that every father who has voluntarily acknowledged paternity and who is later proved not to be the child's biological father may be relieved from the parental obligation he previously undertook. That is not the current state of the law, and I do not believe it is the majority's intent to make it so. However, the majority opinion includes the statement that "it is no longer equitable to require child support from a man conclusively established not to be the biological father of the child." I do not believe it would be inequitable in every factual situation to require a person to continue to live up to responsibilities he voluntarily assumed. Nor do I believe that in every situation it would be just to deprive a child of the support and parental relationship, established by law, upon which the child has relied. In balancing the equities of each case, as Rule 60.02 requires us to do, the financial interests of a father at law who is not also the biological father cannot be presumed to always outweigh the interests of a child.

1999 WL 820823 at *11.

Clearly from the relevant case law, regardless of whether there are parentage tests excluding a legal father from parentage, the gravamen of Rule 60.02(4) relief in these types of cases lies in equity. In terms of equitable considerations, this record indicates that the mother of these children

is now deceased and there is no evidence to suggest that the children have established any meaningful or continuing relationship with any father-figure except for Mr. Humes. The evidence, however, supports a finding that Mr. Humes has nurtured such a relationship with these children. He has exercised visitation with them and has continued to pay support for them. And, even as late as the day of the hearing in this matter, Mr. Humes held himself out as the father of these children when he visited their school. In light of Mr. Humes' actions and the rather precarious position of these two children, Mr. Humes' financial interests simply do not outweigh the value of continuing the parent-child relationship in this case. Consequently, we cannot say that the trial court abused its discretion in denying Mr. Humes relief under Rule 60.02.

At oral argument, Mr. Humes asserted that the trial court abused its discretion in denying his alternate request for additional parentage testing. We disagree. As this Court noted in *State ex rel. Russell v. West*, 115 S.W.3d 886 (Tenn. Ct. App. 2003), parentage testing should be denied when the equitable considerations do not support the disestablishment of paternity. Since Mr. Humes has failed to establish that he is entitled to relief under Rule 60.02, and since there is no equitable basis for such relief, we cannot conclude that the trial court erred in failing to order further parentage testing.

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Appellant, Malcolm Humes, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.