# Harriet H. Sullivan v. Lochearn, Inc., d/b/a Lochearn Camp for Girls

[464 A.2d 745]

No. 82-398

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 7, 1983

*Black, Black & Shreve,* White River Junction, for Plaintiff-Appellee.

*Christopher Dye,* Bradford, for Defendant-Appellant.

**Gibson, J.** Defendant operates a summer boarding camp for girls on Lake Fairlee in Ely, Vermont. Prospective campers have three options: they may attend for the early four-week session, the late four-week session, or for the entire eight-week program. One camper during the 1980 summer season was plaintiff's eleven-year-old daughter. During the summer of 1979, plaintiff contracted with defendant to enroll her daughter for the eight-week 1980 session. In December, 1979, plaintiff changed her mind and reregistered her daughter for the early four-week session. In April, 1980, plaintiff again changed her mind, and with the defendant's acquiescence, registered and paid for the eight-week session. Finally, on July 26, 1980, the day when campers enrolled for the first session only were leaving and second session campers were arriving, plaintiff appeared at the camp and withdrew her daughter. She was that day told that Camp Lochearn would not refund the tuition for the second one-half of the summer.

Thereafter, plaintiff successfully sued for a refund of the $700 tuition for the second one-half of the summer. This appeal by Camp Lochearn followed.

Plaintiff's claim to a refund is premised on two arguments. First, she maintains that her contract with defendant was divisible. As such, she had a legal right to cancel after the first summer session. Second, the contract contained no provision for a refund, thus an ambiguity existed and the contract must be construed to add such a term. The trial court agreed with both of her arguments. After careful review of the evidence in this case, we conclude that the trial court misapplied the law and, therefore, we reverse.

## I.

Central to the trial court's conclusion was the determination that this was a divisible contract. According to the conclusions of law, the divisibility of the contract was determined by

analogy to *Mixer* v. *Williams*, 17 Vt. 457 (1845). In *Mixer*, this Court held that a contract for the delivery of 6–8 tons of starch per month for a two-year period, although contained in a single document, was actionable for breach of contract upon the supplier's failure to ship a single monthly installment. The buyer was not obliged to wait for the end of the two-year contract to sue. While that holding is still good law, and in fact is now governed by statute in Vermont, 9A V.S.A. § 2—612, it does not resolve the issue of divisibility here.

■ Plaintiff's contract required payment of $1500 for the eight-week session. According to other documents in evidence, either four-week session was available at a cost of $800. Thus, it was apparent that the longer-term contract was offered at a discounted rate. Nonetheless, plaintiff bases her conclusion that the contract was divisible on the fact that it is capable of apportionment, since there would be no dispute about the value of each four-week segment. See, e.g., 6 Williston on Contracts § 860, at 255 (Jaeger ed. 1962). However, the ability to apportion a contract does not determine its divisibility.

■ Rather, the cardinal rule in construing contracts is the intent of the parties. *In re Stacey*, 138 Vt. 68, 411 A.2d 1359 (1980). We fail to see why plaintiff would feel obliged to change the contract so many times if the parties had from the beginning intended it to be variable at will. In other words, if the eight-week contract was intended to be divisible without penalty to plaintiff, her concern with keeping defendant advised of her indecision is unexplained.

Perhaps more significant was plaintiff's method for unilaterally terminating the contract on July 26. One week earlier, she had written to defendant advising that she had decided to pick up her daughter at the end of the first session unless her daughter *"honestly desires"* to remain for the second session. (Emphasis in original.) Any legal significance which may attach to this equivocal statement was tempered still further by the next line in the letter: "I shall phone you to confirm my plans." It is clear that defendant, faced with this communication, had no right to give plaintiff's daughter's spot to another camper, much less a duty to do so, until hearing further from plaintiff.

■ Generally, the nonbreaching party does have a duty to make reasonable efforts to mitigate damage. On the record before us, however, mitigation was not possible. Plaintiff's conditional rescission one week before the end of the first session was not effective for two reasons: (1) she placed a condition precedent to the contract modification—her daughter's desires; and (2) she promised to call and confirm her plans. When neither condition occurred, plaintiff's subsequent unilateral breach cannot work to relieve her of all financial responsibility.

■ We therefore hold that the contract was not intended to be divisible, nor did it become so by operation of law.

## II.

Plaintiff also takes the position that, when a contract is silent as to refund policy, it is ipso facto ambiguous on that point and must be interpreted. She then argues that (1) the ambiguous contract must be construed against the drafter (here the defendant) ; and (2) public policy requires clearly posted "no refund" announcements.

■ Plaintiff is correct that, in "the interpretation of contracts, the prime object [is] to ascertain the intention of the parties." *Shell Oil Co.* v. *Jolley,* 130 Vt. 482, 490, 296 A.2d 236, 240 (1972). Moreover, this Court must enforce contracts as they are written, *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges,* 141 Vt. 138, 144, 446 A.2d 347, 350 (1982), and will not read terms into a contract unless they arise by necessary implication. *In re Stacey, supra,* 138 Vt. at 71, 411 A.2d at 1361.

■ Here, the pattern of conduct between the parties is telling. Plaintiff changed her contract on several occasions, each time advising defendant and, as time grew shorter, requesting defendant's permission for the modification. We can only conclude that both parties to the contract intended the document to be binding unless modified by mutual agreement.

■ To allow one party to terminate unilaterally the contract without penalty, while requiring the other party to absorb the entire loss, is to disregard another axiom of contract construction: an obligation of good faith and fair dealing is

an implied term in every contract. *Carter* v. *Sherburne Corp.*, 132 Vt. 88, 315 A.2d 870 (1974); *Shaw* v. *E. I. DuPont de Nemours & Co.*, 126 Vt. 206, 226 A.2d 903 (1966).

*Reversed and remanded for an entry of judgment in favor of defendant.*