IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2003 Session

## STATE OF TENNESSEE EX REL. ROBYN L. RUSSELL v. JACKSON B. WEST

**Appeal from the Chancery Court for Greene County**
**No. 88-195     Thomas R. Frierson, II, Chancellor**

**FILED APRIL 3, 2003**

**No. E2002-01667-COA-R3-CV**

At an earlier time, on April 26, 1989, the trial court entered a judgment dissolving the four-year-plus marriage of Robyn L. Russell ("Mother") and Jackson B. West ("Father"). The judgment incorporated the parties' April 20, 1989, marital dissolution agreement ("the MDA"). That document provides, among other things, that "[Mother] shall have the care, custody and control of [Jarrod West (DOB: July 2, 1985) ("the child"),] *the minor child of the parties*." (Emphasis added). Father was ordered to pay Mother a specified amount of child support. Following the divorce, the parties returned to court on a number of occasions to litigate issues pertaining to the appropriate level of child support and Father's child support arrearage. Later, on February 11, 1999, some ten years after the parties' divorce, Father filed the instant petition seeking genetic testing to determine the paternity of the child. The trial court entered an order directing the parties and the child to submit to the requested testing. When DNA testing excluded Father as the biological father of the child, the trial court granted Father's Tenn. R. Civ. P. 60.02(5) motion directed at the child support portion, as previously modified, of the parties' judgment of divorce and held that "no legal parent/child relationship exists between [Father], and the minor child." The trial court terminated Father's child support obligations effective as of the date of filing of the petition for genetic testing. The court left in place all of Father's child support obligations for all periods of time prior to that date. The State of Tennessee *ex rel.* Mother appeals, raising several issues. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery County Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., filed a concurring opinion.

Paul G. Summers, Attorney General and Reporter and Stuart F. Wilson-Patton, Senior Counsel, Office of the Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee, *ex rel.* Robyn L. Russell.

J. Ronnie Greer, Greeneville, Tennessee, for the appellee, Jackson B. West.

**OPINION**

**I.**

Mother and Father were married on December 26, 1984. Mother was then pregnant with the child. During the time frame when the child could have been conceived, Mother had intimate relations not only with Father, but also with her present husband, Charles Russell. According to Mother's testimony, she was completely forthright with Father and Mr. Russell about the access of each during the critical time frame and about her doubt regarding the identity of the child's biological father. Mother testified that both men wanted to marry her. Father disputed aspects of Mother's testimony. He denied that mother had told him anything that raised a question in his mind about the paternity of the child. Father did admit, however, that he was aware of the fact that Mother and Mr. Russell had been involved in a sexual relationship before Father married Mother. Father insists that he proposed to Mother, believing, without reservation, that he was the child's biological father.

In ordering DNA testing, the trial court made the following factual findings:

> In the case *sub judice*, at the time of the parties' marriage, [Father] maintained suspicions as to his paternity of the minor child. When confronted, [Mother] did not confirm or deny whether [Father] was in fact the biological father of the child. Instead, the matter was left unresolved and [Father] agreed to care for and support the child as his own in return for [Mother's] hand in marriage.

Father's testimony reflects that as early as the mid 1980s, and certainly by the time of the divorce on April 26, 1989, Father had become very suspicious as to whether he was in fact the child's biological father. His uncertainty as to this matter arose, at least in part, from the fact that as the child grew older, he did not exhibit facial features similar to those of Father.[1] In addition, Father found it unusual that at Christmas time, the child would receive presents from Mr. Russell's sister – a person who had no apparent reason to have an interest in the child. Father claims that his doubts regarding his paternity of the child grew after Mother' marriage to Mr. Russell in 1992. Based upon his conversations with the child, Father learned the child had been told that Mr. Russell was his real biological father. It is not altogether clear from the record when these conversations took place; but based upon the evidence in the record that the child and Father had not had a close relationship since about 1993, *e.g.*, there had been no overnight visitation with the child since 1993, we assume these conversations took place soon after Mother's marriage to Mr. Russell.

---

[1] In fact, early grade school photographs of the child and *Mr. Russell* that are in the record reflect a striking resemblance between the two of them.

Despite having some real pre-divorce doubts regarding his paternity of the child, Father entered into the MDA, a document that expressly identifies the child as his offspring. As previously noted, the MDA also designates Mother as the child's custodian and orders Father to pay child support. On May 20, 1996, Father filed a petition to modify his child support obligation, stating in part, that he "[was] unable to pay the child support for *my child/children* as previously ordered by [the] [c]ourt because [of] deduction [sic] in income." (Emphasis added). Furthermore, no pleading filed by Father prior to his 1999 petition for genetic testing challenges the notion that he is the child's biological father. Father testified that he orally raised the issue of paternity at a hearing in 1992, a hearing that was apparently focused on his failure to pay child support. However, there are no pleadings or orders prior to February 11, 1999, that intimate, in any way, that Father is not the child's biological father. On the contrary, no fewer that three orders entered post-divorce judgment refer, directly or indirectly, to Father as the father of the child.

## II.

## A.

Father contends that the trial court's decision to grant his petition for genetic testing – testing that eliminated him as the biological father of the child – was not an abuse of discretion given the facts of the case and controlling law. As primary support for this contention, Father points to Tenn. Code Ann. § 24-7-112 (2000).[2] Father asserts that this statute vests a trial court with discretion to decide, in a given case, whether genetic testing to determine parentage is equitable. Father argues that it would be inequitable to require him to continue to pay support for a child who is not his biological offspring. In essence, Father asserts the court below properly exercised its discretion when it decided that equity favored the granting of his petition. Finally, Father argues that once the testing established that he could not possibly be the child's biological father, the trial court equitably relieved him, prospectively, of any child support obligation.

---

[2]Tenn. Code Ann. § 24-7-112 (2000), reads, in pertinent part:

> [(a)](2) During any other civil or criminal proceeding in which the question of parentage arises, upon the motion of either party or on the court's own motion, *the court shall at such time as it deems equitable* order all necessary parties to submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage.

(Emphasis added).

B.

Mother, through the State of Tennessee in this *ex rel.* proceeding,[3] raises several issues on this appeal. She contends that Father's failure to raise the issue of paternity at the time of the divorce precludes him from raising the issue now. Mother relies on the theory of waiver. Mother also contends that Father did not file his Rule 60.02(5) petition within a reasonable period of time.[4] In addition, Mother argues that the doctrine of *res judicata* bars Father's petition. She contends that the issue of whether Father was the biological father of the child is an issue that could have been and should have been raised at the time of the divorce, or, at the latest, in connection with one of the several post-judgment proceedings that addressed (1) whether child support should be modified and/or (2) the issue of Father's alleged child support arrearage. In addition, Mother contends that the version of Tenn. Code Ann. § 24-7-112[5] in place when the parties' divorce was granted, rather than the statute as currently written, controls this case. Under the former language of that statute, Mother argues, Father waived the paternity issue by failing to raise it "at the initial appearance" in the original divorce proceedings.

III.

As previously indicated, the trial court treated Father's petition as a motion for relief from judgment pursuant to Tenn. R. Civ. P. 60.02(5), which provides as follows:

---

[3] The brief of the State of Tennessee *ex rel.* Robyn L. Russell states the following:

> The State of Tennessee is providing child support enforcement services to Ms. Russell, pursuant to Title IV-D of the Social Security Act, 42 U.S.C. Section 651, *et seq.*, and Tenn. Code Ann. § 71-3-124(c). The Attorney General's Office is providing its services on appeal by agreement with the Tennessee Department of Human Services pursuant to the same authority and pursuant to its duty to represent the interests of the State in Tennessee appellate courts. Tenn. Code Ann. § 8-6-109(b)(2).

[4] Tenn. R. Civ. P. 60.02 requires that a motion for relief under subsection (5) of that rule "shall be made within a reasonable time,...."

[5] Tenn. Code Ann. § 24-7-112 (West, WESTLAW through 1989), Chapter 459, Public Acts of 1983, § 1, reads, in pertinent part, as follows:

> (a) In the trial of any civil or criminal proceeding in which the question of parentage arises, the court before whom the matter may be brought, upon the motion of either party *at the initial appearance*, shall order that all necessary parties submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. *Failure to make a timely motion for submission to such tests and comparisons shall constitute a waiver and shall not be grounds for a continuance....*

(Emphasis added).

-4-

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons:...*(5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time,....*

(Emphasis added). A trial court's decision to grant relief pursuant to Tenn. R. Civ. P. 60.02 is discretionary and may be disturbed only if the court below abuses its discretion. ***Ellison v. Alley***, 902 S.W.2d 415, 418 (Tenn. Ct. App. 1995); ***Steioff v. Steioff***, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992). A trial court abuses its discretion if its decision

> is based on a misapplication of controlling legal principles or a clearly erroneous assessment of the evidence, ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999), or unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the complaining party. ***Marcus v. Marcus***, 993 S.W.2d 596, 601 (Tenn. 1999); ***Douglas v. Estate of Robertson***, 876 S.W.2d 95, 97 (Tenn. 1994).

***Robinson v. Clement***, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001).

While the language of Tenn. R. Civ. P. 60.02(5) could be read to suggest a broad application of its terms, it has been "very narrowly" construed by the courts of this state. ***Holiday v. Shoney's South, Inc.***, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000); ***Steioff***, 833 S.W.2d at 97; ***Duncan v. Duncan***, 789 S.W.2d 557, 564 (Tenn. Ct. App.1990). Two applications of the rule have been recognized. One is limited to worker's compensation cases,[6] and the other is directed at those cases presenting "extraordinary circumstances or extreme hardship." ***Gaines v. Gaines***, 599 S.W.2d 561, 564 (Tenn. Ct. App.1980); *see also* ***Duncan***, 789 S.W.2d at 564 ("relief [is provided] only in the most unique, exceptional, or extraordinary circumstances."). A petitioner has a "heavy burden" under Rule 60.02(5). ***Steioff***, 833 S.W.2d at 97. In addition, we have previously noted that "[t]he purpose of Rule 60.02(5) is not to relieve a party from his or her free, calculated, and deliberate choices. *See* ***Underwood*** [***v. Zurich Ins. Co.***], 854 S.W.2d [94,] 97 [(Tenn. 1993)]." ***Holiday***, 42 S.W.3d at 94 (additional citations omitted).

With respect to the issue of *res judicata*, the Supreme Court has stated the following:

> The term "*res judicata*" is defined as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.... [T]o be applicable, it

---

[6] *See* ***Brown v. Consolidation Coal Co.***, 518 S.W.2d 234, 238 (Tenn. 1974).

requires identity of cause of action, or person and parties to action, and of quality in persons for or against whom claim is made." Black's Law Dictionary 1172 (5th ed. 1979) (citations omitted). We have recently discussed the doctrine [...] as follows:

> The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit.[...]

*Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989) (quoting from *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987)). *Res judicata* [...] appl[ies] only if the prior judgment concludes the rights of the parties on the merits. *A.L. Kornman Co. v. Metropolitan Gov't of Nashville & Davidson County*, 216 Tenn. 205[, 212], 391 S.W.2d 633, 636 (1965). One defending on the basis of *res judicata* [...] must demonstrate that 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues. *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn. [Ct.] App. 1977), *cert. denied*, (Tenn. 1978).

*Richardson v. Tennessee Bd. of Denistry*, 913 S.W.2d 446, 459 (Tenn. 1995).

We have addressed the issue of waiver in litigation thusly:

> The failure to assert a claim or defense in a timely manner is deemed a waiver of the right to rely on the claim or defense later in the proceeding.

*Rawlings v. The John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) (citations omitted).

IV.

A.

We have concluded that there are a number of reasons why the facts of this case and applicable law support a holding that Father cannot pursue the relief sought in this case. We will address each of these reasons in turn.

B.

At the outset, we hold that Father did not pursue his Rule 60.02(5) motion within a reasonable period of time. The Supreme Court has offered the following guidance on the issue of timely filing under the rule:

> Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. Rule 60.02 does not, however, permit a litigant to slumber on [his] claims and then belatedly attempt to relitigate issues long since laid to rest.

*Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). In the present case, the information that ultimately led Father to bring the instant petition was known to him for a number of years prior to his filing of the Rule 60.02(5) motion. It seems clear that Father first had his doubts regarding whether he was the child's biological father as early as the time of the parties' marriage and certainly no later than when Mother filed for divorce. Despite these doubts, Father refrained from raising this issue. Instead, he waited some ten years after the divorce to file his Rule 60.02(5) motion, while, in the interim, continuing to claim to be the child's father. A delay of years, given the facts of this case, is clearly unreasonable.

We also hold that the trial court abused its discretion in determining that it was equitable to allow Father's petition to proceed. On the contrary, we believe such relief in this case was not equitable. Allowing equitable relief from a judgment so long after that judgment becomes final violates one of the principal maxims of equity jurisprudence, *i.e.*, "equity aids the vigilant, not those who sleep upon their rights." William H. Inman, *Gibson's Suits in Chancery*, § 93, p. 89 (7th ed. 1988), *quoted in **Brown v. Ogle***, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000). We believe that, by waiting almost ten years from the divorce judgment, Father has surrendered his right to seek equitable relief. This being the case, we conclude that the trial court abused its discretion in ordering genetic testing and granting relief based upon the results of that testing.

Having decided that the trial court's decision was not equitable, we conclude that the parties' arguments regarding which version of Tenn. Code Ann. § 24-7-112 applies address a moot issue. Regardless of which version of the statute applies, Father cannot prevail. *See **State ex rel. Whitfield v. Honeycutt***, No. M1999-00914-COA-R3-CV, 2001 WL 134597, at *2 (Tenn. Ct. App. M.S., filed February 16, 2001) ("Although the [newer version of the] statute contains the mandatory 'shall,' it also has the discretionary language 'at such time as it deems equitable.' We read the statute as allowing the trial court the discretion to apply equitable principles and determine whether to permit the parentage test." (citation omitted)). If the former version applies, it is clear that Father waived the issue of parentage testing by failing to raise it "at the initial appearance" in the divorce case. If the later version of the statute applies, there must still be a finding that testing is equitable. Therefore, regardless of which version applies, the trial court reached the wrong conclusion.

In addition to the timeliness-of-filing issue and the equity issue, we conclude that Father's petition is barred by the doctrines of waiver and *res judicata*. The MDA and the orders arising from the post-divorce judgment petitions identify Father as the father of the child. He indicates that on one occasion he orally raised the issue of paternity. If this be true, the trial court must have resolved this issue against him because the order following that hearing continued to treat him as the father of the child. Since Father was aware of a real possibility that he was not the child's biological parent at an early date, he cannot now in good faith argue that he was not afforded an opportunity to pursue this matter in the divorce proceedings, or, at the latest, in one of the post-judgment hearings.[7] *See* **Richardson**, 913 S.W.2d at 459; *see also* **Scales**, 564 S.W.2d at 670. We conclude that he waived this issue and, in any event, the issue is *res judicata*.

V.

The judgment of the trial court is reversed. This case is remanded to the trial court for the entry of an order denying Father's Rule 60.02(5) motion at his costs. Costs on appeal are also taxed to the appellee, Jackson B. West.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[7]This court has previously stated that genetic testing to determine parentage has been viable since 1983. **State ex rel. Cox v. Jones**, 1989 WL 122846, at *3 (Tenn. Ct. App. W.S., filed October 18, 1989).