2007 VT 128

# Dorothea E. O'Connell-Starkey v. Gorden S. Starkey

[944 A.2d 897]

No. 05-166

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed November 30, 2007

*Mark A. Kaplan* of *Jarvis and Kaplan*, Burlington, for Plaintiff-Appellee.

*Marsha Smith Meekins* of *Roesler, Whittlesey, Meekins & Amidon*, Burlington, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Gorden Starkey appeals from a family court order requiring him to pay college tuition for Kristen O'Connell-Starkey. In so requiring, the family court concluded that the latest amended divorce order was not ambiguous and found that, although it left the issue of college tuition open for contest, defendant had never contested it. Therefore, defendant remained obligated under a previous agreement to pay 60% of the child's college tuition. We affirm.

¶ 2. The following facts are uncontested. On June 5, 1985, plaintiff gave birth to a child while she and defendant were living together. On November 28, 1986, the parties married. In October 1993, when the child was eight years old, plaintiff filed for divorce. In November 1993, the parties stipulated to a temporary child support order in which they agreed to share legal and physical parental rights and responsibilities. That order established that the child was a child of the marriage. On June 30, 1994, the family court entered a final order based on the parties' stipulation. The final order maintained the provisions of the temporary order.

¶ 3. In April 1996, plaintiff moved to Virginia and, pursuant to provisions made in the final order, defendant took sole physical custody of the child. Plaintiff retained shared legal custody and visitation with the child during the summer. In December 1997, defendant moved to modify the child support order, seeking child

support from plaintiff because of her move. The parties began negotiating an agreement regarding child support. From a DNA test dated March 9, 1998, defendant learned that there was a 99% probability that he was not the child's father. Nevertheless, on March 25, 1998, the family court approved a stipulated settlement of defendant's child support motion. The settlement agreement contained no mention of the DNA test. The amended order awarded child support to defendant, reduced plaintiff's share of the child's medical expenses, required both parties to maintain life insurance policies for the child's benefit, and required defendant to pay 60% and plaintiff to pay 40% of the child's college tuition, room, board, and fees.

¶ 4. Approximately three months later, in June 1998, plaintiff moved to modify the child support order. She requested sole legal and physical custody so that the child could move to Virginia and attend school there. Defendant opposed the motion, arguing that there had been no real, substantial and unanticipated change in circumstances. He further argued that the change was not in the child's best interests. On September 2, 1998, the family court entered a temporary order, again based upon a stipulation of the parties, in which the parties continued their shared legal rights and responsibilities, but agreed that plaintiff would have sole physical rights and responsibilities for the 1998-1999 school year. The order relieved plaintiff of her child support obligation, and provided that defendant would not pay child support for the next year in exchange for his not seeking an alleged child support arrearage. It affirmed all other provisions of the previous orders. During the rest of 1998 and most of 1999, the parties attempted to negotiate a final agreement to resolve plaintiff's June 1998 motion to modify parental rights and responsibilities. On December 1, 1999, the family court approved a negotiated agreement that purported to do so and issued the requested amended order. The agreement contains three substantive paragraphs that read as follows:

> 1. The final order dated June 30, 1994 in the above entitled matter shall be further amended only by striking in its entirety paragraph 2 of said order. Only Paragraphs 1, 6 and 7 of the stipulated modification order dated March 24, 1998 shall be vacated and of no further force and effect. The intent of the parties here is to amend the final order dated June 30, 1994 as amended to

reflect the fact that the Defendant Gorden Seth Starkey is not the biological father of the parties' minor child based upon a DNA parentage test report dated March 9, 1998 and as a result as of the date of this stipulation, has no legal or physical rights and responsibilities with respect to the parties'[] minor child.

2. The stipulated temporary order dated September 1, 1998 shall be vacated in its entirety and of no further force and effect except that Plaintiff shall be entitled to claim the parties' minor child as a dependent for income tax purposes on her 1999 tax return and thereafter.

3. The issues of future child support, health insurance, college expenses, and maintenance of life insurance, are not waived by either party.

¶ 5. In December 2003, the child finished her first semester at the University of North Carolina Wilmington. In February 2004, plaintiff filed a motion to enforce the March 25, 1998 order. She made no mention of the December 1999 agreement. Plaintiff also sought a contempt citation against defendant for violating a court order by failing to pay 60% of the child's college expenses. Defendant opposed the motion to enforce, arguing that the 1999 agreement stripped him of all legal and physical rights and responsibilities, and therefore, he had no responsibility to pay. On June 9, 2004, Judge Keller ruled that the 1999 order was ambiguous, and he set the matter for a hearing to determine its meaning. The hearing took place over two days, November 17, 2004 and January 10, 2005, before Judge Joseph. On March 22, 2005, Judge Joseph ruled that the 1999 order was unambiguous. The family court found that the 1999 order struck only certain paragraphs of the previous agreement and left others in force. The court found that the college tuition paragraph was not stricken. Further, the family court interpreted the last paragraph of the 1999 order as specifically leaving open for dispute the issues of future child support, health insurance, college expenses, maintenance, and life insurance. Since neither party had moved to modify the March 1998 order regarding college expenses, the family court found that "the college expenses provision of the 1998 Amendment is still in effect and the defendant must pay 60% of [the child's] college expenses." The court also granted plaintiff interest and attorney's fees.

¶ 6. On appeal, defendant raises three issues. Defendant contends that the trial court erred in concluding that the 1999 order was unambiguous. Defendant also suggests that the trial court misconstrued the 1999 order, and finally, defendant argues that the trial court erred in enforcing the March 1998 order against him.

¶ 7. We first take up defendant's claim that the trial court erred in concluding that the 1999 order was unambiguous. The trial court reversed its earlier decision on this issue, stating that the "law of the case" doctrine is a discretionary rule of practice, not a rule of law, and a trial court has discretion to depart from the doctrine. *State v. Malshuk*, 2004 VT 54, ¶ 7, 177 Vt. 475, 857 A.2d 282 (mem.). The family court then determined that the last section of the 1999 order was not ambiguous when read as part of the whole agreement between the parties. The court read the 1999 order as a whole, considering it in light of the other provisions. The court particularly emphasized the passage that struck only paragraphs 1, 6, and 7 of the 1998 order:

> The college expenses provision is found in paragraph 3 of the 1998 Amendment; it was not vacated or stricken by the 1999 Amendment. There are only three numbered paragraphs in the 1999 Amendment. Because the Amendment contains provisions which either vacate or strike provisions from previous orders, the defendant's argument that the third paragraph of the 1999 Amendment was intended to vacate the third paragraph of the 1998 Amendment is just not plausible. The 1999 Amendment merely states that issues concerning college expenses and other support items can be contested in the future. When considered in the context of the entire document, there is no ambiguity in the contested paragraph of the 1999 Amendment. That portion of the 1998 Amendment in which the defendant agreed to pay 60% of [the child's] college expenses is still in effect.

██ ██ ¶ 8. "We review de novo the trial court's determination as to whether the agreement is ambiguous, as well as its construction of the terms of the agreement." *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 8, 177 Vt. 70, 857 A.2d 263. Ambiguity exists where the disputed language will allow more than one reasonable interpretation. *Isbrandtsen v. N. Branch*

*Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). In such cases, this Court may consider the circumstances surrounding the making of the agreement to ascertain the parties' true intent. *Id.* at 578, 556 A.2d at 84. While we may examine the surrounding circumstances to determine whether a provision of the agreement is ambiguous, this Court may not use those circumstances "to vary the terms of an unambiguous writing." *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999). "Where the terms of [an agreement] are plain and unambiguous, they will be given effect and enforced in accordance with their language." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 150, 636 A.2d 325, 328 (1993).

¶ 9. In this case, the trial court correctly concluded that the final paragraph in the 1999 amended order was not ambiguous. The issues identified in that paragraph — future child support, health insurance, college expenses, and maintenance of life insurance — are discussed in paragraphs 2, 3, 4, and 5 of the 1998 amended order. These paragraphs were not disturbed by the 1999 order. The final paragraph specifically reserves to each party the right to continue to litigate those issues, and the language "not waived by either party" puts each party on notice that he or she might still be called to account for those provisions. The disputed language will not allow more than one reasonable interpretation. *Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83.

¶ 10. Defendant next argues that even if the final paragraph of the 1999 order was not ambiguous, the trial court misconstrued it. We review the trial court's construction of the parties' agreement de novo. *Four Oaks Conservation Trust v. Bianco*, 2006 VT 6, ¶ 5, 179 Vt. 597, 892 A.2d 258 (mem.). In interpreting a contract we seek to effectuate the intent of the parties, *Sullivan v. Lochearn, Inc.*, 143 Vt. 150, 152, 464 A.2d 745, 746 (1983), and "when the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms." *In re Verderber*, 173 Vt. 612, 615, 795 A.2d 1157, 1161 (2002) (mem.).

¶ 11. Here, defendant contends that the court erred by interpreting the March 1998 and the 1999 agreement and resulting orders together as one contract. He argues that nothing in the 1999 order indicates his willingness to pay for college expenses, and therefore, that the trial court erred by reading the terms of the 1998 order into the 1999 order. Defendant argues that the two

orders were made in such different circumstances and contain such different subject matter that the two cannot be read together to create a consistent whole.

¶ 12. We disagree. The 1999 order carefully left specific portions of the 1998 order in place. Specifically, the 1999 order did not disturb: paragraph 2, requiring defendant to maintain medical insurance for the minor child with each party paying a portion of uncovered medical expenses; paragraph 3, requiring the parties to share the cost of college education; paragraph 4, eliminating the requirement that the parties maintain the child on retirement programs; and paragraph 5, requiring the parties to maintain life insurance. That the 1999 order also stated an understanding that those issues could be revisited by the parties in the future is perfectly sensible. Because the 1999 order specifically vacated portions of the final divorce decree and of the 1998 agreement between the parties, we cannot accept defendant's suggestion that the third paragraph was meant to replace or vacate the college expenses provision in the 1998 order. The parties clearly demonstrated their ability to amend those paragraphs that they wanted to amend, and to affirm those obligations that each wanted the other to uphold.

¶ 13. Defendant correctly notes that the two orders settled different claims. The 1998 order resolved defendant's motion to modify child support pursuant to 15 V.S.A. § 663. The 1999 order resolved plaintiff's motion to modify child support and parental rights and responsibilities. *Id.* § 665. Despite their differences, both orders modified the final divorce decree. For these reasons, we find no error in the family court's construction of the 1999 order.

¶ 14. The dissent attempts to extrapolate from the circumstances of this case support for its decision that the agreement of the parties is ambiguous. However, the assumptions made are incorrect and derive from the dissent's basic, harsh philosophy. Because the parties stipulated that defendant was not the biological father and that he had no "legal or physical rights and responsibilities with respect to the parties' minor child," the dissent assumes defendant's concession means defendant had no intention of remaining a supportive parent in the life of a child he raised as his own until the age of fourteen. There is nothing inconsistent about having no legal rights and responsibilities for a child and continuing to love and provide for that child.

¶ 15. Looking at what it views as the parties' circumstances, the dissent concludes that plaintiff's choice not to return to the family court for an order of child support "is a clear indication that she believed she could not obtain child support in light of the 1999 agreement." We cannot begin to know the reasons plaintiff did not seek any action by the court regarding child support. The fact is, she did return to court to enforce the agreement for sharing college expenses, in light of the 1999 agreement. The dissent's assumption is incoherent on this point.

¶ 16. Finally, the dissent finds support for its finding of ambiguity because the 1999 order eliminated the entire paragraph of the original order establishing shared parental rights and responsibilities for the minor child, and suggests "the only provision left giving mother parental rights" is her right to claim the parties' minor child as a dependent for income tax purposes. While the 1999 order did strike the shared parental rights and responsibility determination, it does not follow that mother no longer retains those rights. The stated purpose of the 1999 order amending the 1994 final order is to reflect the fact that *defendant* was "not entitled to any legal physical rights and responsibilities of the parties' minor child." Its purpose was not to remove plaintiff's rights.

¶ 17. Defendant also argues that he cannot be obligated to support the college education of a child to whom he is not biologically related and for whom he has relinquished all parental rights and responsibilities. Specifically, he argues that either a finding of paternity or a presumption of paternity arising under a final order of divorce is a necessary predicate to an ex-husband's obligation to pay child support. Defendant concedes that the final divorce decree established paternity, created a compulsory legal duty to pay child support, and formed the legal and jurisdictional basis for the 1998 order. He contends, however, that the 1999 order, memorializing the fact that "defendant . . . is not the biological father of the parties' minor child" removed the necessary legal predicate for imposing future child support obligations.

¶ 18. This argument overlooks the fact that the parentage determination in a final divorce decree is not open to collateral attack in a motion to modify child support. *Godin v. Godin*, 168 Vt. 514, 523-24, 725 A.2d 904, 910 (1998); *St. Hilaire v. DeBlois*, 168 Vt. 445, 448, 721 A.2d 133, 135 (1998); *Lerman v. Lerman*, 148

Vt. 629, 629, 528 A.2d 1121, 1122 (1987) (mem.). Instead, the final divorce order establishes parentage, and unlike parental rights and responsibilities and child support, the family court does not retain jurisdiction of parentage once the nisi period has run. *Jones v. Murphy*, 172 Vt. 86, 89, 772 A.2d 502, 504 (2001). A party wishing to contest parentage after the nisi period must move to amend the judgment pursuant to Vermont Rule of Civil Procedure 60. *Id.*

¶ 19. In *Jones v. Murphy*, this Court faced a situation in which the former spouses attempted to undo a parentage determination by means of a stipulation. *Id.* at 87, 772 A.2d at 503. There, a DNA test, taken just weeks after the final divorce decree, demonstrated that the husband was not the father of the youngest child in the family. After the nisi period had run,[1] the trial court entered an order on a stipulation amending the judgment to state that the husband was not the biological father of the child, and therefore had "no parental rights and responsibilities with respect to [the child]." *Id.* The mother then filed a parentage action against the biological father; the trial court found for the mother and the biological father appealed. We held that the amendment to the final divorce decree was a nullity because neither party moved to amend the judgment during the nisi period, and neither party had moved to amend the judgment under Rule 60. *Id.*

¶ 20. This case bears some resemblance to *Jones v. Murphy*, in that the parties apparently expected, by means of the 1999 agreement, to undo the parentage determination in the final divorce decree. "[T]he intent of the parties here is to amend the final order . . . to reflect that the Defendant . . . is not the biological father of the parties' minor child." The stipulation in this case was characterized as a motion to amend parental rights and responsibilities, and to the extent that the court modified the same, it was a valid exercise of the family court's jurisdiction. 15 V.S.A. §§ 665, 668. However, as an attempt to alter the parentage determination in the original divorce decree, it is null and void. *Jones*, 172 Vt. at 89, 772 A.2d at 504.[2] The family court loses

---

[1] The nisi period in Vermont is three months. 15 V.S.A. § 554.

[2] See also *In re M.Z.*, 472 N.W.2d 222, 223 (N.D. 1991) (stipulation of paternity in support judgment precluded parties from relitigating the issue). But see *Opland v. Kiesgan*, 594 N.W.2d 505, 512 (Mich. Ct. App. 1999) (holding that an order based on a stipulation of the parties to modify the parentage provision of a divorce order

jurisdiction to amend such determinations once the nisi period has run, absent a motion under Rule 60. Therefore, defendant's argument — that the 1999 agreement removed the necessary predicate (parentage) upon which to base the award of college expenses — fails.

¶ 21. This decision comports with the decisions in a majority of states that have examined situations in which one parent challenges a child support order by presenting DNA evidence that the parent is not biologically related to the child. For example, numerous states preclude ex-husbands from denying paternity in post-divorce proceedings when the divorce decree establishes the child as issue of the marriage.[3] Even when the biological father has been located, an ex-husband may be estopped from denying his status as the child's parent. *W. v. W.*, 779 A.2d 716, 722 (Conn. 2001).

¶ 22. For the foregoing reasons, we hold that the family court correctly concluded that the agreement is unambiguous, and properly construed the parties' agreement regarding college expenses. We further hold that insofar as the parties intended the 1999 agreement to alter the parentage determination in the final divorce decree, they failed. However, nothing in this opinion should be construed to foreclose defendant's ability to move to modify the college expenses provision. It is clear that the 1999 order left "issues of future child support, health insurance, [and] college expenses" open to modification.[4]

*Affirmed.*

---

is valid and prevents the putative father from raising judicial estoppel in a later paternity action).

[3] See *In re Marriage of Hotz*, 214 Cal. Rptr. 658, 660 (Ct. App. 1985); *W. v. W.*, 728 A.2d 1076, 1080-81 (Conn. 1999); *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 508 (Ky. Ct. App. 2005); *Paternity of Cheryl*, 746 N.E.2d 488, 499 (Mass. 2001); *In re Marriage of Holland*, 730 P.2d 410, 411 (Mont. 1986); *Callison v. Naylor*, 777 P.2d 913, 916 (N.M. Ct. App. 1989); *Shondel J. v. Mark D.*, 853 N.E.2d 610, 614 (N.Y. 2006); *In re Gilbraith*, 512 N.E.2d 956, 961 (Ohio 1987); *State ex rel. Russell v. West*, 115 S.W.3d 886, 892 (Tenn. Ct. App. 2003); *In re R.J.P.*, 179 S.W.3d 181, 186 (Tex. App. 2005); *Marriage/Children of: Betty L.W. v. William E.W.*, 569 S.E.2d 77, 86 (W. Va. 2002) (per curiam); *In re Paternity of JRW & KB*, 814 P.2d 1256, 1264 (Wyo. 1991).

[4] The dissent suggests that the majority opinion gives only mother, and not father, rights under paragraph 3 of the 1999 order. This is not correct. The case is here on plaintiff's motion to enforce. Defendant failed to seek modification, instead responding with a motion to strike the March 1998 order as a nullity. At the time

¶ 23. **Dooley, J.,** dissenting. The majority holds that the parties here unambiguously intended to preserve defendant's previously agreed obligation to fund a portion of the child's college education despite their subsequent agreement that defendant is "not the biological father of the parties' minor child" and "as a result . . . has no legal or physical rights and responsibilities with respect to the parties'[] minor child." This conclusion is supported by neither the language of the agreement nor the evidence surrounding its execution, which demonstrate — at a minimum — a patent ambiguity concerning the parties' meaning and intent. Rather than affirm, therefore, the Court should reverse the judgment and remand for the factual findings that the law and the record here require. Accordingly, I respectfully dissent.

¶ 24. The main deficiency in the majority opinion, apart from its conclusion, is that it barely acknowledges, and fails to address, defendant's argument. This case is not primarily about paragraph 3 of the 1999 order, as the majority states; it is about paragraph 1. That paragraph states that "as of the date of this stipulation, [defendant] has no legal or physical rights and responsibilities with respect to the parties' minor child." If that paragraph contained nothing else, I believe that the resolution of this case would be obvious. The provision that defendant has no "legal . . . responsibilities" would clearly preclude any child support obligation, and related financial obligations, such as the higher education payment responsibility that is at issue in this case. It would cover those financial responsibilities even though they were specified in earlier orders.

¶ 25. The issue then is whether the other language of paragraph 1, striking paragraph 2 of the original divorce order and vacating "[o]nly Paragraphs 1, 6 and 7 of the stipulated modification order dated March 24, 1998" makes the last sentence of the paragraph inoperative as a matter of law. The family court held that the opening language necessarily trumped the later language, because the obligation that plaintiff is enforcing is in the 1998 agreement and the paragraph containing it is not "1, 6, [or] 7." That logic is appealing, but we should be suspicious of labeling as unambiguous language that is internally inconsistent. For a number of reasons, the internal inconsistency is strong here, and the superficial logic

of this appeal, he had not yet filed a motion to modify the provision governing college expenses.

of the family court analysis should not prevail. Bad drafting has made the language hopelessly ambiguous, and to the extent the language is not ambiguous, it favors defendant's result, not plaintiff's.

¶ 26. The majority's main general response to this dissent is that it is based on an assumption of defendant's intent that is a "basic, harsh philosophy" that defendant does not want to continue "to love and provide for that child." *Ante,* ¶ 14. If defendant wanted to continue to "provide for that child," he never would have contested the obligation to pay or brought this appeal. The essential disagreement between this dissent and the majority is that I would consider and act on the evidence of defendant's intent, whereas the majority has refused to consider it and ignores it. Defendant testified that he "was certainly not inclined to accept any financial responsibility at that point in time" and had an objection to "future or past payments of child support and/or expenses for" the child. The majority displays its disapproval of this position by calling it a harsh philosophy when stated in this dissent and suggesting that his financial argument means that he does not love the child, comments that are neither supported by the record or relevant to the appeal issue. Nonetheless, there is no question that this is the position defendant took before this Court and, according to his testimony, his position at the time of the negotiation of the agreement. This dissent makes no assumptions concerning defendant's position. The majority, on the other hand, assumes his position must be to the contrary of what defendant states because it reflects a harsh philosophy, and that assumption is inconsistent with the undisputed evidence.

¶ 27. With that general background in mind, I address the specific reasons why we should reject the family court's reasoning. The first and foremost reason becomes apparent when we examine the substance of the agreement the parties reached in 1999. As set out above, paragraph 1 strikes or vacates four provisions of orders arising from the parties' divorce. The first is paragraph 2 of the divorce order of 1994. This paragraph specifies the parties' parental rights and responsibilities with respect to the child; striking this paragraph is entirely consistent with defendant's intent to give up all rights and responsibilities with respect to custody of the child.

¶ 28. The other three provisions, all from the 1998 order, are related to parental rights and responsibilities, and all involve

relinquishment of defendant's rights. Paragraph 1 of the 1998 order provided joint access to the child's health, school, and counseling records. Paragraph 6 of the 1998 order required plaintiff to pay child support of $209 per month until the child reached the age of eighteen or completed secondary education. Paragraph 7 of the order required plaintiff to pay her portion of the child's documented uninsured health care costs to defendant.

¶ 29. The remaining provisions of the 1998 order, not mentioned specifically in the 1999 agreement, all involved defendant's financial responsibilities. Paragraph 2 of the 1998 order required defendant to maintain medical insurance for the child and each party to pay a portion of the child's medical expenses not covered by defendant's medical insurance. Paragraph 3 of the 1998 order, the paragraph involved in this case, required defendant to pay 60% and plaintiff to pay 40% of the child's college education costs. Paragraph 4 specified that neither party was required to maintain the child as a beneficiary under any retirement program that either might have. Paragraph 5 required each party to maintain insurance on the life of the child until she completed college or reached the age of twenty-two.

¶ 30. Under the family court's reasoning, the 1999 agreement meant that defendant relinquished full parental rights, but retained full financial obligations as if there had been no relinquishment. This reasoning makes the 1999 agreement entirely one-sided. More importantly, despite the fact that paragraph 1 of the 1999 agreement says that defendant has no legal responsibilities with respect to the child, in fact he retained the most important of his legal responsibilities: those involving money. The effect then is that the 1999 agreement is internally inconsistent, and the family court and majority of this Court have given no effect to the final sentence of the first paragraph, effectively reading it out of the agreement.

¶ 31. Second, despite the fact that the last sentence of paragraph 1 of the 1999 agreement has no effect when it comes to defendant's legal responsibilities, it is the only provision left giving plaintiff parental rights. Rather than substituting a provision with respect to custody of the child, the parties struck all agreements and orders, leaving only the general statement in paragraph 1 that father has no rights and responsibilities with respect to the child. Thus, plaintiff is in the position of giving effect to the sentence to retain custody of the child, but denying its effects

when they involve elimination of defendant's responsibilities. More importantly, the majority decision necessarily means that part of the last sentence of the last paragraph of the 1999 agreement is in effect — the part that gives rights to the mother — while part is not in effect — where it eliminates responsibilities of defendant — a parsing of the language that belies any characterization that it is unambiguous.

¶ 32. Third, we are entitled to consider context evidence in determining ambiguity, and the context evidence here demonstrates ambiguity. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 578, 556 A.2d 81, 83-84 (1988) (in determining whether an agreement is clear and unambiguous, we are not bound by the "four corners" of the agreement but may admit extrinsic "evidence as to the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing"); accord *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999). Although the child of the parties was fourteen years old when the 1999 agreement was entered into and although the family court's reasoning necessarily means that defendant retained *all* financial responsibilities, not just participation in college expenses, four years went by with no demand for such participation. The available evidence from a 1998 affidavit was that defendant made about $100,000 per year and plaintiff about $20,000 per year; yet, plaintiff made no claim for child support. In fact, the 1999 agreement suggested that there would be no child support order because plaintiff was "entitled to claim the parties' minor child as a dependent for income tax purposes on her 1999 tax return and thereafter." Any child support order based on the parties' income would mean that defendant would pay the majority of the child's expenses and be entitled to the tax deduction. See *In re Marriage of Moore*, 719 N.E.2d 326, 328 (Ill. App. Ct. 1999) (child support tax "exemption has historically been tied to consideration by the Internal Revenue Service of which parent would contribute the majority of the child's support following the parent's divorce").

¶ 33. The general child support situation until the child reached the age of majority and went to college is also informative. The original child support order was established on a temporary basis in November 1993, when the parties continued living in the same house despite their separation and therefore no payment of child support was appropriate. Recognizing that this status quo would

not continue, the court ordered father to file an affidavit of income and assets with the understanding that a monetary order would result. It did not occur right away, apparently because the parties continued to live in the same house. Once plaintiff moved to Virginia, however, and defendant had sole custody, he sought a child support order and finally obtained one in 1998. Based on this history, the clear expectation was that if plaintiff obtained custody, there would be a child support order under which defendant would have to pay substantial amounts. That plaintiff never returned to the family court throughout the child's minority, as the 1993 temporary order contemplated, is a clear indication that she believed she could not obtain general child support in light of the 1999 agreement.

¶ 34. Fourth, the parties' agreement to vacate certain provisions of the 1998 order without replacement language suggests that defendant was to have no future financial obligation. For example, the 1998 order required defendant to maintain the child on his health insurance with the parties sharing uncovered costs 40% (plaintiff), 60% (defendant). Because defendant had custody of the child, in order to implement that agreement, paragraph 7 of the 1998 order required plaintiff to pay her share of those costs within thirty days. Although the 1999 agreement switched custody to plaintiff, and according to the majority's analysis retained the cost-sharing arrangement, it struck plaintiff's time limit for making payments without substituting a time limit for defendant. This omission suggests that defendant had no further obligation to pay uncovered medical expenses, and there is no evidence that mother sought such amounts from plaintiff.

¶ 35. Similarly, paragraph 1 of the 1998 order gave defendant access to records of the child including "law, school, health and counseling records." The 1999 agreement specifically eliminated that right, although under the family court and majority holding, defendant remained liable for college expenses, and medical expenses as well. That defendant is now denied access to these records is an indication that he does not have to pay for the services documented in those records. Under the majority's result, he has cut himself off from the very information that enables him to determine that the expenses he pays are valid.

¶ 36. Fifth and finally, I reach paragraph 3 of the 1999 agreement, the focus of the family court and the majority. This paragraph says that all the issues related to defendant's financial

responsibilities "are not waived by either party." The family court, and the majority, are clear that the language of this paragraph does not give defendant a right to contest any of his financial obligations in an enforcement proceeding. Beyond that, the meaning of the language is unexplained, or it is explained in terms directly contrary to the holding.

¶ 37. The family court says that paragraph 3 means that "child support issues, including college expenses, can be disputed in the future," a phrase repeated further in the decision. The majority embraces an equally cryptic, but different meaning: the language "reserves to each party the right to continue to litigate" but "puts each party on notice that he or she might still be called to account for those provisions." *Ante*, ¶ 9. The majority suggests that the problem is the title to defendant's motion, as a motion to strike, rather than a motion to modify. *Ante*, ¶ 22 n.4. A motion to strike part of an order *is* a motion to modify the order.

¶ 38. In the words of the family court, this is "the future," and defendant seeks to litigate whether he any longer owes college expense reimbursement in light of the language of paragraph 1. Neither the majority nor the family court explains why he cannot litigate the issue in this proceeding or how he can litigate it. Despite the vague suggestions that there is some alternative way to litigate, I read the majority as imposing exactly the waiver result that the language of paragraph 3 denies. That is, by failing to get into the 1999 agreement that the college expense obligation was vacated, defendant has waived any defense to a demand to pay. In effect, the language of paragraph 3 is being interpreted exactly the opposite of its wording.

¶ 39. An agreement is ambiguous if "reasonable people could differ as to its interpretation." *Trustees of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). The majority holds that the only reasonable interpretation of the 1999 agreement between the parties is that they modified parts of their divorce order, but not the requirement that defendant pay part of the minor child's college expenses. The more likely interpretation is that the parties agreed in 1999 that defendant would have no further legal responsibility for the minor child but could not agree to the specific consequences of that general agreement with respect to defendant's financial responsibilities. Under that interpretation, defendant can litigate his financial obligations in this proceeding.

¶ 40. For the many reasons cited in this dissent, the 1999 agreement is at least ambiguous. I would reverse and remand to the family court to reach an interpretation in light of the evidence that it heard.

¶ 41. I am authorized to state that Justice Johnson joins this dissent.