*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-268

JANUARY TERM, 2012

| | |
|---|---|
| Gerald F. Gugino | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| v. | } Civil Division |
| | } |
| | } |
| National Grange Mutual Insurance | } DOCKET NO. 195-4-10 Wmcv |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals the superior court's decision granting summary judgment in favor of defendant, plaintiff's insurer, in this breach-of-contract action. We affirm.

Our review on a motion for summary judgment is de novo. Handverger v. City of Winooski, 2011 VT 134, ¶ 7 ("We review summary judgment de novo. The same standard employed by the trial court applies here."). In reviewing the record, we consider the record evidence in the light most favorable to the non-moving party, in this case plaintiff. V.R.C.P. 56; Robertson v. Mylan Laboratories, Inc. 2004 VT 15, ¶ 15, 176 Vt. 356 (noting that "nonmoving party receives the benefit of all reasonable doubts and inferences"). Viewing the undisputed evidence in that light, the facts are as follows.

Defendant issued plaintiff a business automobile insurance policy with effective dates of September 21, 2006 to September 21, 2007. The policy provided clearly and unambiguously:

1. The most we will pay for "loss" in any one "accident" is the lesser of:
   a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or
   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

In addition, the declarations page associated with the policy specifically stated that the physical damage insurance—both for collision and for "other than collision"—was limited to "actual cash value, or cost of repair, whichever is less minus any deductible shown."

In November 2006, plaintiff purchased a 2006 Chevrolet HHR. He secured insurance for the vehicle by adding it to this existing policy. At the time he added the new truck to the policy, the insurance agent told him that in the event of a total loss the coverage would provide for full "replacement cost" of $18,000. Plaintiff received a temporary binder from the insurance

company good from November 3 through December 3, 2006. The form documenting the policy change described the change as follows: "Adding vehicle #2 2006 Chevrolet (0342) with Sovereign Bank as loss payee and form CA9944 which now applies per the attached revised schedules."[1]  The form reflects the new premium and references the original policy issued September 21, 2006.  The form does not otherwise attach or reference any new or substitute policy pages relating to the scope and limits of coverage.  The revised schedule of covered autos includes the new Chevrolet truck.  On that page, the "cost new" of the truck is listed as $18,000.

Following a May 2007 automobile accident in which the truck was totaled, plaintiff submitted a claim to defendant seeking the replacement cost for the truck, which he claimed had been set at $18,000.  Defendant tendered to plaintiff two checks totaling $15,434, which plaintiff cashed under protest.  In April 2010, plaintiff filed a complaint alleging that defendant had violated the terms of the parties' contract by not paying him $18,000 for the replacement cost of the vehicle.

The trial court denied defendant's initial motion for summary judgment, ruling that although the terms of the applicable policy appeared to limit coverage to actual cash value, plaintiff raised a factual question as to whether defendant's agent represented to plaintiff at the time he purchased the truck that he was purchasing "replacement value" coverage.  Plaintiff had submitted affidavits in which he claimed that: (1) the automobile salesman from whom he purchased the truck told him that he would have to buy replacement value coverage for the vehicle to obtain financing; and (2) defendant's agent told him that his policy would provide such coverage.  In April 2001, the court held an evidentiary hearing to consider the adequacy of plaintiff's responses to defendant's discovery requests.  In affidavits and at the hearing, both the automobile salesman and the insurance agent denied making such statements to plaintiff and testified that they would never engage in such discussions in the regular course of an automobile sales transaction.  In particular, the agent stated in her affidavit that to her knowledge, there is no such thing as a "full replacement cost" automobile policy.

In July 2011, the superior court entered a decision granting defendant's renewed motion for summary judgment.  The court found that the record established beyond dispute that plaintiff received proceeds from defendant equaling or exceeding the actual cash value of his vehicle, which is all that he was entitled to under the plain language of his insurance policy.  According to the court, when the testimony of the automobile salesman and the insurance agent is considered along with the plain language of the policy limiting loss to actual cash value or cost of repair, plaintiff's claim of being entitled to replacement value "is left without any context that would make it credible to a reasonable factfinder."

On appeal, plaintiff's primary argument is that the two documents issued to him by defendant when he added his truck to the policy prove that he was entitled to replacement value for the totaled truck.  According to plaintiff, the first one—the binder given to him on November 3, 2006 when he purchased the truck—"clearly excludes actual cash value as a limit to the collision portion of the policy."  Plaintiff points out that the binder places an "X" next to the term "other" rather than the terms "actual cash value" or "stated amount" with regard to the limits of collision coverage on the truck.  The second binder, so called, is the schedule of covered vehicles attached to the notice documenting the mid-term change in policy terms dated November 27, 2006.  Again according to plaintiff, this document "specifically states that what was purchased was a stated amount."  He further maintains that the second binder lists the cost of the truck at

---

[1] The record contains no evidence regarding the content of form CA9944.

$18,000 in one section, and then in other sections includes the phrase "PURCHASED STATED AMT" and states "NO" in the space indicating limit to collision coverage.

We review a trial court's construction of the terms of a contract de novo. Downtown Barre Development v. C & S Wholesale Grocers, Inc., 2004 VT 47 ¶ 8, 177 Vt. 70. When an agreement is ambiguous, meaning disputed language will allow more than one reasonable interpretation, courts may consider the circumstances surrounding the making of the agreement to ascertain the parties' true intent. O'Connell-Starkey v. Starkey, 2007 VT 128 ¶ 8, 183 Vt. 10. However, where the terms of an agreement are plain and unambiguous, "they will be given effect and enforced in accordance with their language." Id.

In this case, the contract in effect at the time of plaintiff's collision consisted of the underlying insurance policy and declarations page—both of which undisputedly and unambiguously provide that physical damage coverage is limited to actual cash value—and the modifying document reflecting the addition of plaintiff's truck to the policy. The question for this Court, then, is whether that modifying document either (1) reflects a change in the coverage terms set forth in the underlying policy with respect to the limits of physical damage coverage, or (2) creates sufficient ambiguity to trigger consideration of the circumstances surrounding the change—such as who said what to whom.[2]

We conclude that the contract is not ambiguous. There can be no doubt that the underlying policy and declarations page clearly establish "actual cash value" coverage, subject to specified deductibles and conditions. The updated premium statement and attached schedule of covered autos relied upon by plaintiff do nothing more than add the Chevrolet truck to the existing policy. No language in that document purports to vary the coverage terms of the actual policy to which it is appended. On its face, it describes the mid term change (MTC) effective November 3 simply as "adding vehicle #2 2006 Chevrolet (0342) with Sovereign Bank as loss payee and form CA9944 which now applies per the attached revised schedules." The fact that the schedule lists a stated "cost new" for each covered vehicle is not sufficient to create an ambiguity as to the clear coverage terms of the contract. Likewise, on a page that's rife with abbreviations, headings with and without data under them, and numbers, the heading "PURCHASED STATED AMOUNT" with nothing in the column below, and the cryptic letters "NO" in a section that appears to describe the limits of collision coverage for the Chevrolet truck do not render the contract ambiguous in the face of the clear language of the underlying policy.

Plaintiff contends that he is entitled to a jury trial because defendant has offered only "ex post facto" evidence, but in fact defendant demonstrated that plaintiff received all that he was entitled to under the plain language of the applicable policy. Plaintiff may be referring to the affidavits and testimony of the car salesman and defendant's representative proffered in support of defendant's motion. Because we decide this case on the basis of the plain language of the contract, we need not consider that testimony, or plaintiff's own account of who said what, in upholding the court's award of summary judgment.

---

[2] The "binder" relied upon by plaintiff is not part of the contract that was in effect at the time of plaintiff's loss, as it expired on its own terms on December 3, 2006. Accordingly, unless we conclude that the contract is ambiguous such that consideration of extrinsic evidence is warranted, the chosen checkbox on that form has no significance. See 12A J. Appleman, Insurance Law and Practice § 7227, at 154 (1981) ("[A] binder does not constitute part of an insurance policy, nor does it create any rights for the insured other than during its effective period.").

Plaintiff also briefly contends that the trial judge was biased and corrupt as evidenced by his failure to disclose that he had been involved in a car accident. Assuming the truth of plaintiff's unsupported statement that the trial judge was in a car accident at some point, such an event by itself is no basis for finding either bias or a conflict of interest. Rejecting this non-existent conflict leaves only the court's adverse ruling, which, "even if wrong, do[es] not alone show judicial bias." See DeLeonardis v. Page, 2010 VT 52, ¶ 30, 188 Vt. 94.

Finally, plaintiff argues that principles of res judicata should have precluded the trial court from granting summary judgment to defendant after having previously denied defendant's previous motions for summary judgment. The trial court's denial of defendant's initial request for summary judgment was, of course, not a final judgment; therefore, res judicata did not bar the court from reconsidering its prior ruling upon a renewed motion by defendant. See In re Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20 (2001) (setting forth elements of res judicata and collateral estoppel, both of which require prior final judgment regarding claim or issue); Morrisville Lumber Co., Inc. v. Okcuoglu, 148 Vt. 180, 182 (1987) (explaining that denial of motion for summary judgment is not a final judgment).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice